Matter of Semrau v Coca-Cola Refreshments USA Inc. (2020 NY Slip Op 07650)





Matter of Semrau v Coca-Cola Refreshments USA Inc.


2020 NY Slip Op 07650


Decided on December 17, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 17, 2020

530727

[*1]In the Matter of the Claim of Daniel G. Semrau, Appellant,
v
Coca-Cola Refreshments USA Inc. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: November 16, 2020

Before: Garry, P.J., Lynch, Clark, Mulvey and Reynolds Fitzgerald, JJ.


Bronk & Somers, PC, Rochester (Mark C. Somers of counsel), for appellant.
Goldberg Segalla LLP, Syracuse (Cory A. DeCresenza of counsel), for Coca-Cola Refreshments USA Inc. and another, respondents.



Lynch, J.
Appeal from a decision of the Workers' Compensation Board, filed July 19, 2019, which ruled that claimant was entitled to a zero percent schedule loss of use award of his left leg.
After falling at work in January 2016, claimant established claims for injuries to his left knee and a tear to his left medial hamstring. In August 2017, he underwent surgery to repair a meniscus tear to his left knee. In 2018, to determine the permanency of his injuries, claimant was evaluated by Rola Rashid, his treating orthopedist, and James McGlowan, an orthopedist who conducted a medical exam of claimant on behalf of the employer's workers' compensation carrier. Both orthopedists submitted reports and agreed that claimant had reached maximum medical improvement (hereinafter MMI) and that, following the surgical repair of his left knee, he had full range of motion in that knee with no permanent impairment. Rashid testified that claimant's hamstring injury, described as a "large" muscle tear that left a "big defect" and a raised scar, was an uncommon injury that was not surgically repairable. Rashid concluded that claimant had sustained a 25% schedule loss of use (hereinafter SLU) of his left leg due to the hamstring impairment. Given that a hamstring impairment is not specifically addressed in the 2018 Workers' Compensation Guidelines for Determining Impairment (hereinafter the 2018 guidelines), Rashid relied upon the special consideration under hip and femur impairments for a quadricep rupture, concluding that it correlated most closely to claimant's hamstring injury and impairment (see Workers' Compensation Guidelines for Determining Impairment § 6.5, special consideration 5, at 38 [2018]). McGlowan [FN1] found that claimant had a 10% SLU of his left leg based upon the hamstring impairment.
A Workers' Compensation Law Judge found, among other things, that Rashid's medical report and testimony were the best medical evidence of permanency, that her opinion was rationally based upon the special consideration for a quadricep rupture and, based on the foregoing, that claimant had a 25% SLU of his left leg. On administrative appeal, the carrier indicated that it would concede that claimant had a 10% SLU of his left leg. The Workers' Compensation Board modified, concluding that claimant was not entitled to any SLU award for his left leg, reasoning that there was no special consideration applicable to a hamstring impairment in the guidelines and no range of motion deficit in his left knee. Claimant appeals.
"Whether a claimant is entitled to an SLU award and, if so, the resulting percentage are factual questions for the Board to resolve" and, thus, the Board's determination will be upheld provided that it is supported by substantial evidence (Matter of Maunder v B & B Lbr. Co., 166 AD3d 1261, 1261 [2018] [internal quotation marks and citations omitted]). SLU "awards are not given for particular injuries[; rather,] they are made to compensate an injured worker [*2]for his or her loss of earning power or capacity that is presumed to result, as a matter of law, from the residual permanent physical and functional impairments to statutorily-enumerated body members" (Matter of Johnson v City of New York, 180 AD3d 1134, 1135-1136 [2020] [internal quotation marks and citations omitted], lv granted 35 NY3d 915 [2020]; accord Matter of Covington v New York City Dept. of Corr., 187 AD3d 1285, 1285 [2020]; see Workers' Compensation Law § 15 [3]).
Under Workers' Compensation Law § 15 (3) (b), a leg is a statutorily enumerated body member for which an SLU award may be awarded. Although a hamstring muscle is not listed as a body part lending itself to a separate SLU award in either Workers' Compensation Law § 15 (3) or the 2018 guidelines, ordinarily, "[s]uch impairments to separate parts of a member are encompassed in an overall SLU award for that specified member" (Matter of Blair v SUNY Syracuse Hosp., 184 AD3d 941, 942 [2020]; see Workers' Compensation Law § 15 [3] [b]; Workers' Compensation Guidelines for Determining Impairment § 1.5, at 8 [2018]; Matter of Rickard v Central NY Psychiatric Ctr., 187 AD3d 1260, 1261 [2020]; Matter of Bell v Glens Falls Ready Mix Co., Inc., 169 AD3d 1145, 1147-1148 [2019]). Thus, like other body parts that make up the leg, such as a knee or femur, an impairment of a hamstring is "encompassed by [an] award[] for the loss of use of the leg, which is the applicable statutorily-enumerated body member" (Matter of Johnson v City of New York, 180 AD3d at 1136; see Workers' Compensation Law § 15 [3] [b]). Although, unlike a knee, femur, tibia or hip, a hamstring is not specifically referenced in the 2018 guidelines,[FN2] neither the governing statute nor the 2018 guidelines supports the conclusion that a claimant who sustains an otherwise qualifying permanent impairment to a body part of a statutorily enumerated member is not entitled to an SLU merely because that particular body part is not specifically referenced in a special consideration. Although muscles, tendons and ligaments of the leg and hip are not all addressed in the 2018 guidelines, there is a clear directive that a "permanent residual physical deficit . . . may include physical damage to," among other body parts, muscles and tendons (Workers' Compensation Guidelines for Determining Impairment § 6.2, at 34; § 7.2, at 41 [2018] [emphasis added]).
Here, the orthopedists agreed that claimant's hamstring muscle tear left a permanent leg impairment and a functional loss to that member, and concurred that he had reached MMI, disagreeing only as to the percentage of impairment. If credited, this satisfied the criteria for a left leg SLU award (see Workers' Compensation Guidelines for Determining Impairment § 1.5, at 8 [2018]). For comparative purposes, Rashid relied upon the special consideration for quadricep ruptures, which allows for a 15% to 20% SLU for "deformity and weakness," with more to be added for mobility deficits, and [*3]further provides that the average SLU is 20% to 25% for a loss of use of the leg. Rashid explained that the primary function of a hamstring muscle, located on the back of the leg between the knee and the hip, is knee flexion, and that it also contributes to hip extension. Rashid testified that, as a result of claimant's injury, the hamstring muscle is nonfunctional, leaving him with a weakness in his left leg due to atrophy and loss of the muscle and a deformity in the form of a prominent, lump scar and muscle tightness. According to Rashid, the impairment caused claimant to have difficulty sitting — due to the pressure on the scar — and bending over, which causes his hamstring to "pull[] on the back of his thigh." With regard to mobility defects, when claimant lies in a supine position and extends his left leg straight, he can only flex his hip to 40 degrees due to the tightening of the hamstring, and only has full hip flexion if he bends his knee (see Workers' Compensation Guidelines for Determining Impairment, Table 6.4, at 37 [2018]; Employer: Hillside Family of Agencies, 2011 WL 483092, *1-2, 2011 NY Wrk Comp LEXIS 637, *1-3 [WCB No. 7080 1816, Jan. 4, 2011]). Rashid selected the upper end of the impairment, 25%, due to the size of the tear. McGlowan noted that the 2018 guidelines did not provide SLU guidance for hamstring tears, and did not otherwise explain the source for his SLU calculation other than that it was a "large hamstring tear."
The 2018 guidelines provide that SLU awards are for "residual permanent physical and functional impairments," which "must involve anatomical or functional loss such as physical damage to[, among other body parts,] muscles" (Workers' Compensation Guidelines for Determining Impairment § 1.5 [2], at 8 [2018]). It bears emphasis that in the sections for hip/femur and knee/tibia, the guidelines provide that the SLU is calculated by assessing the permanent residual physical deficit after MMI, and "may include physical damage to bone, muscles, cartilage, tendons" and other parts (Workers' Compensation Guidelines for Determining Impairment § 6.2, at 34; § 7.2, at 41 [2018] [emphases added]).
The Board's conclusion that no SLU award can be made because "no special consideration applies to a hamstring tear" fails to take into consideration that the 2018 guidelines specifically permit an SLU award to be based upon a permanent residual deficit caused by physical damage to a muscle, such as a hamstring. We recognize that the 2018 guidelines provide "useful criteria" and the Board makes the ultimate determination of a claimant's degree of disability, but that determination must be supported by substantial evidence (Matter of Carlucci v Omnibus Print. Co., Inc., 68 AD3d 1259, 1260 [2009]; accord Matter of Empara v New Rochelle Sch. Dist., 130 AD3d 1127, 1129 [2015], lv denied 26 NY3d 911 [2015]; Matter of Haight v Con Edison, 78 AD3d 1468, 1469 [2010], lv denied 16 NY3d 708 [2011]). In finding that claimant [*4]was not entitled to an SLU award, the Board did not discredit or find unpersuasive the medical opinion of either of the orthopedists, reject Rashid's opinion that this hamstring tear injury most closely correlated to a quadricep rupture or find that the orthopedists' SLU calculations were inadequately supported; rather, the Board found that, even if credited, the medical opinions could not support an SLU award here (cf. Matter of Maunder v B & B Lbr. Co., 166 AD3d at 1262-1263; Employer: Suffolk County Dept. of Civil Serv., 2018 WL 6431262, *1-2, 2018 NY Wrk Comp LEXIS 8653, *1-2 [WCB No. G142 4407, Dec. 3, 2018]).
To the extent that any deference is due to the Board's interpretation of the 2018 guidelines (see Matter of Arias v City of New York, 182 AD3d 170, 172 [2020]; Matter of Till v Apex Rehabilitation, 144 AD3d 1231, 1234 [2016], lv denied 29 NY3d 909 [2017]), we find, contrary to the Board's interpretation, that, in the absence of specific instructions regarding hamstring tears in the 2018 guidelines, a medical expert could rationally rely upon the special consideration for quadricep ruptures as the closest corollary to claimant's injury and impairment. The absence of a special consideration addressing a hamstring impairment did not preclude an SLU award for a leg impairment (see e.g. Employer: Essex County Self-Insurance, 2019 WL 2486327, *1-3, 2019 NY Wrk Comp LEXIS 5969, *1-7 [WCB No. 121 1352, June 6, 2019]; Employer: Suffolk County Sheriff Dept., 2015 WL 5145413, *1-3, 2015 NY Wrk Comp LEXIS 7440, *2-9 [WCB No. G071 6782, Sept. 1, 2015]). As the Board's determination is not supported by substantial evidence, it must be reversed, and the matter remitted for a determination of claimant's SLU award.
Garry, P.J., Clark, Mulvey and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: Claimant waived cross-examination of McGlowan, who submitted a medical examination report but did not testify.

Footnote 2: It is noted that a hamstring tendon avulsion or tear is listed in the 2012 guidelines in Table 11.10 pertaining to impairments of the pelvis (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity, Table 11.10, at 81 [2012]). The 2012 guidelines were repealed by the 2018 guidelines (see Workers' Compensation Law 15 [3] [x]), which apply here given that the first SLU evaluation occurred in 2018 (see Workers' Compensation Board, Impairment Guidelines, Overview [http://www.wcb.ny.gov/content/
main/hcpp/ImpairmentGuidelines/ImpGuideOverview.jsp]).