Matter of Kristl v Rome City Sch. Dist. (2021 NY Slip Op 02025)





Matter of Kristl v Rome City Sch. Dist.


2021 NY Slip Op 02025


Decided on April 1, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: April 1, 2021

529642

[*1]In the Matter of the Claim of Nancy Kristl, Respondent,
v
Rome City School District et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date: March 11, 2021

Before: Garry, P.J., Egan Jr., Clark, Aarons and Reynolds Fitzgerald, JJ.


Wolff, Goodrich & Goldman, LLP, Syracuse (Alicia M. Blair of counsel), for appellants.
Law Offices of Thomas N. Kaufmann, Fayetteville (Thomas N. Kaufmann of counsel), for Nancy Kristl, respondent.
Letitia James, Attorney General, New York City (Gary Leibowitz of counsel), for Workers' Compensation Board, respondent.



Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed December 31, 2018, which ruled, among other things, that claimant sustained a 32.5% loss of wage-earning capacity.
In 2010, claimant, employed as the Director of Support Services for the employer, established a workers' compensation claim for the neck, bilateral shoulders and top four teeth stemming from a work-related accident. Claimant's average weekly wage was calculated and varying awards were rendered for specified periods. In 2018, the parties were directed to produce medical evidence of permanency and claimant, having raised the issue of reduced earnings as of June 30, 2017 — the date on which claimant retired — was directed to produce a vocational data form. Following a hearing, the Workers' Compensation Law Judge classified claimant as having a permanent partial disability with a cervical spine condition of B severity, as well as a shoulder condition, and found that claimant had a 32.5% loss of wage-earning capacity. However, the Workers' Compensation Law Judge found that claimant was not currently entitled to causally-related reduced earnings because she voluntarily withdrew from the labor market as of the time of her retirement and was not entitled to indemnity benefits until such time as she established reattachment to the labor market. Upon administrative appeal, the Workers' Compensation Board affirmed. The self-insured employer and its third-party administrator appeal.
We affirm. "In situations where, as here, a claimant sustains a permanent partial disability that is not amenable to a schedule award, the Board must determine the claimant's loss of wage-earning capacity in order to fix the duration of benefits" (Matter of Varrone v Coastal Envt. Group, 166 AD3d 1269, 1270 [2018] [internal quotation marks and citation omitted], lv denied 32 NY3d 917 [2019]; see Workers' Compensation Law § 15 [3] [w]; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 9.3, at 47 [2012]). The manner for determining the loss of wage-earning capacity for a claimant with a nonschedule permanent partial disability involves the evaluation of three types of input, namely, the nature and degree of the medical impairment, functional ability/loss and non-medical vocational factors such as education, skill, training, age and literacy (see Matter of Rapaglia v New York City Tr. Auth., 179 AD3d 1257, 1258 [2020]; Matter of Bloomingdale v Reale Constr. Co. Inc., 161 AD3d 1406, 1408 [2018]; see also New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity chs 9, 10 at 44-50 [2012]).
The Board credited the medical opinion of Raymond Fiorini, an independent medical examiner, who opined that the nature and degree of claimant's medical impairment included a bilateral shoulder condition and a neck condition with a B severity ranking, which was lower than the severity ranking found by one of claimant's treating [*2]physicians. Medical records from claimant's treating physicians reflect significant impairments in the loss of use of her shoulders. Fiorini also found, consistent with the medical opinion of one of claimant's treating physicians, that claimant had limited functional and exertional abilities, making her suitable only for sedentary work. Regarding the vocational factors, the Board recognized claimant's extensive education and work experience. The record establishes that, in rendering its determination, the Board weighed the nature and degree of claimant's physical impairment and impact on physical activities, as noted in medical records, deposition testimony and as testified to by claimant, with the mitigating vocational factors. Given that the Board considered the appropriate factors, and according deference to the Board's assessment thereof, we find that substantial evidence supports the Board's determination as to the degree of claimant's loss of wage-earning capacity (see Matter of Lesane v City of New York Police Dept., 153 AD3d 1112, 1113 [2017]; Matter of Burgos v Citywide Cent. Ins. Program, 148 AD3d 1493, 1496 [2017], affd 30 NY3d 990 [2017]).
We decline to address that part of the Board's decision discussing claimant's potential entitlement to indemnity benefits upon establishing a reattachment to the labor market. The employer and its third-party administrator can appeal, if necessary, from any final decision by the Board on this interlocutory issue (see Matter of DiPaola v McWane, Inc., 172 AD3d 1863, 1865 [2019]; Matter of Covert v Niagara County, 146 AD3d 1065, 1066 [2017], lv denied 34 NY3d 910 [2020]).
To the extent that we have not addressed any remaining contentions raised by the employer and its third-party administrator, such contentions have been found to be without merit.
Garry, P.J, Egan Jr., Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is affirmed, without costs.