Matter of Strack v Plattsburgh City Sch. Dist. (2022 NY Slip Op 00710)





Matter of Strack v Plattsburgh City Sch. Dist.


2022 NY Slip Op 00710


Decided on February 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 3, 2022

533294
[*1]In the Matter of the Claim of Nancy Strack, Appellant,
v
Plattsburgh City School District, Respondent, et al., Respondent. Workers' Compensation Board, Respondent.

Calendar Date:January 5, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

Niles & Bracy, PLLC, Plattsburgh (John M. Crotty of counsel), for appellant.
Sullivan Keenan Oliver & Violando, LLP, Albany (Michael J. Keenan of counsel), for Plattsburgh City School District, respondent.



Egan Jr., J.P.
Appeal from a decision of the Workers' Compensation Board, filed November 2, 2020, which ruled that claimant was entitled to a 0% schedule loss of use award for her left leg.
On September 6, 2016, claimant, a full-time school teacher, sustained a left intertrochanteric hip fracture and an injury to her left wrist when she fell to the ground as a result of a door handle breaking off on the door that she was attempting to open. The following day, C. Philip Volk, claimant's treating physician, performed a surgical intramedullary nailing with gamma nail of left hip. Claimant's subsequent claim for workers' compensation benefits was established for injuries to her left hip and left wrist, and claimant received temporary total disability payments for approximately 10 weeks while she was out of work from September 7, 2016 to November 14, 2016. In 2018, to determine the permanency of her injuries, claimant was evaluated on July 31, 2018 by Richard Saunders and on September 14, 2018 by Douglas Petroski, each of whom were physicians who conducted independent orthopedic medical examinations of claimant. As relevant here, Saunders found that claimant had sustained a 60% schedule loss of use (hereinafter SLU) of the left leg, whereas Petroski found that claimant had sustained a 0% SLU of the left leg. Following a hearing and depositions of Saunders and Petroski, a Workers' Compensation Law Judge (hereinafter WCLJ) credited the opinion of Saunders and consequently found, among other things, that claimant had sustained a 60% SLU of the left leg. Upon administrative review, the Workers' Compensation Board rescinded the WCLJ's decision, finding that, based upon the 2018 Workers' Compensation Guidelines for Determining Impairment,[FN1] an opinion regarding claimant's causally-related permanency of the left hip could not yet be made, as consideration of updated X rays were required under the impairment guidelines (see Workers' Compensation Guidelines for Determining Impairment § 6.5 [8] at 38). The Board also directed claimant to obtain an evaluation from Volk on the question of permanency in accordance with Chapter Six of the impairment guidelines and Special Consideration No. 8 set forth therein (see Workers' Compensation Guidelines for Determining Impairment § 6.5 [8] at 38).
Following Volk's February 2020 examination of claimant, and the subsequent deposition of Volk, a WCLJ found, among other things, that because Volk did not provide a permanency assessment and Saunders' opinion, as previously found by the Board, was not in accordance with the impairment guidelines absent consideration of updated X rays, "the only remaining option [was] to implement the 0% SLU assessed by . . . Petroski," as his conclusion was "based . . . upon the applicable [g]uidelines." Upon administrative review, the Board affirmed the WCLJ's finding of a 0% SLU of the left leg by adopting the findings and conclusions of the WCLJ. Claimant appeals.
Claimant's principal argument [*2]on appeal is that the Board's reliance on the medical opinion of Petroski was improper because his finding of a 0% SLU of the left leg was without the benefit of consideration of updated X rays, and his medical opinion as to permanency was therefore not made in accordance with the impairment guidelines. We agree. "Whether a claimant is entitled to an SLU award and, if so, the resulting percentage are factual questions for the Board to resolve. Consequently, judicial review is limited, and the Board's determination will not be disturbed as long as it is supported by substantial evidence" (Matter of Gilliam v DOCCS Wende Corr. Facility, 190 AD3d 1080, 1081 [2021] [internal quotation marks and citations omitted]; see Matter of Semrau v Coca-Cola Refreshments USA Inc., 189 AD3d 1873, 1874 [2020]; Matter of Bell v Glens Falls Ready Mix Co., Inc., 169 AD3d 1145, 1146 [2019]). "Notably, the Board is vested with the authority to resolve conflicting medical opinions concerning the SLU percentage to be assigned to a specific injury, and, to that end, the Board is free to accept or reject portions of a medical expert's opinion" (Matter of Gilliam v DOCCS Wende Corr. Facility, 190 AD3d at 1081 [internal quotation marks and citations omitted]; see Matter of Napoli v Con Edison, 169 AD3d 1121, 1123 [2019]; Matter of Campbell v Interstate Materials Corp., 135 AD3d 1276, 1277 [2016]).
As relevant here, Special Consideration No. 8 of the impairment guidelines provides: "Hip fracture with or without surgery requires two years before the final evaluation for [an SLU] award. Request for [an] up to date [X ray] of the femoral head to evaluate bone stock and to investigate for loosening and displacement/malalignment of hardware. In the event metallic hardware is removed, evaluate for [an SLU] no sooner than six months after removal; such evaluation shall be no sooner than two years from date of hardware insertion" (Workers' Compensation Guidelines for Determining Impairment § 6.5 [8] at 38).
In Petroski's September 2018 report summarizing his independent orthopedic examination of claimant, he describes claimant's medical and treatment history and indicates that he had reviewed various medical records, including his prior independent orthopedic examination report from 2016 and addendum from 2017, several 2017 reports from Volk and the July 2018 independent orthopedic examination report from Saunders. Nowhere in his September 2018 report, however, does Petroski state or otherwise indicate that he had obtained and considered and reviewed updated X rays, as required by Special Consideration No. 8 of the impairment guidelines (Workers' Compensation Guidelines for Determining Impairment § 6.5 [8] at 38), in arriving at his conclusion that claimant had sustained a 0% SLU of her left leg. Similarly, the deposition testimony of Petroski also does not reflect that had he obtained and considered updated X rays in rendering his opinion about the appropriate SLU of claimant's [*3]left leg.[FN2] Although Petroski stated that no new history was given at the time of or during his examination of claimant, he acknowledged that he did not recall declining to review X rays that claimant brought with her to the examination for him to review. Significantly, the failure to obtain and consider updated X rays was the very same flaw that the Board previously identified and relied upon in discrediting the July 2018 report of Saunders finding that claimant had sustained a 60% SLU of the left leg. Inasmuch as Petroski did not obtain and consider updated X rays consistent with the impairment guidelines, the Board's determination to credit Petroski's finding that claimant sustained a 0% SLU was not supported by substantial evidence and must be reversed (see Workers' Compensation Guidelines for Determining Impairment § 6.5 [8] at 38; cf. Matter of Semrau v Coca-Cola Refreshments USA Inc., 189 AD3d at 1877). Accordingly, we remit the matter for a proper determination of claimant's SLU award made in accordance with the impairment guidelines and Special Consideration No. 8 set forth therein.
Lynch, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is reversed, with costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: "Where the first medical evaluation of SLU occurs on or after January 1, 2018, the question of SLU will be evaluated under the 2018 SLU Guidelines" (Matter of Fiato v New York State Dept. of Transp., 195 AD3d 1251, 1253 [2021], lv denied ___ NY3d ___ [Jan. 6, 2022]; accord Workers' Compensation Board, Subject No. 046-1011, 2018 Permanent Impairment Guidelines for Schedule Loss of Use Evaluations).

Footnote 2: Petroski also incorrectly stated in his testimony that none of the special considerations set forth in chapter six of the impairment guidelines applied to claimant.