Matter of Simmons v Glens Falls Hosp. (2022 NY Slip Op 00712)





Matter of Simmons v Glens Falls Hosp.


2022 NY Slip Op 00712


Decided on February 3, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 3, 2022

533657
[*1]In the Matter of the Claim of Mary Lou Simmons, Appellant,
v
Glens Falls Hospital et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:January 4, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

Erwin, McCane & Daly, Albany (Ashley M. Hart of counsel), for appellant.
Vecchione, Vecchione, Connors & Cano, LLP, Garden City Park (Brian M. Anson of counsel), for Glens Falls Hospital and another, respondents.



Pritzker, J.
Appeal from a decision of the Workers' Compensation Board, filed December 15, 2020, which ruled, among other things, that claimant sustained a 25% loss of wage-earning capacity.
Claimant, a nuclear medicine technologist, sustained a work-related injury to her back and right leg in 2005 while working in a hospital and, in 2013, was classified with a 25% permanent partial disability. As claimant was working at full wages and had no compensable lost time, no award was made. Claimant changed jobs in 2008 and accepted a similar position at an outpatient facility,[FN1] where she continued to work until March 2017, at which time she stopped working altogether due to chronic back pain and difficulty walking. Following a hearing in May 2017, a Workers' Compensation Law Judge (hereinafter WCLJ) found that claimant was entitled to a reduced earnings award effective March 2, 2017.
Claimant underwent a lumbar laminectomy in January 2018 and thereafter was assessed by both the consultant for the employer's workers' compensation carrier and her treating physician, Douglas Petroski, on the issue of permanency. Both the carrier's consultant and Petroski opined that claimant had reached maximum medical improvement and, although assigning different severity rankings to her lumbar spine injury, both physicians found that claimant was capable of light work. Petroski thereafter filed a C-27 form in August 2019 alleging a change in claimant's medical condition, and the Workers' Compensation Board granted claimant's request to reopen the matter for further development of the record as to permanency.
Following the depositions of Petroski and the carrier's consultant, as well as the receipt of claimant's testimony, the WCLJ found that claimant had sustained a 50% loss of wage-earning capacity. The WCLJ's resulting decision, which classified claimant with a 50% permanent partial disability, also awarded claimant's attorney $4,000 in counsel fees. The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) sought review with respect to claimant's classification rate, and claimant sought review as to the effective date thereof. In conjunction therewith, claimant also requested that the counsel fee award be increased by $1,350. By decision filed December 15, 2020, the Board, among other things, modified the WCLJ's decision by reducing claimant's loss of wage-earning capacity to 25% and rescinding the award of counsel fees. Claimant's subsequent application for reconsideration and/or full Board review was denied, and this appeal from the Board's December 2020 decision ensued.[FN2]
"In situations where, as here, a claimant sustains a permanent partial disability that is not amenable to a schedule award, the Board must determine the claimant's loss of wage-earning capacity in order to fix the duration of benefits" (Matter of Kristl v Rome City Sch. Dist., 193 AD3d 1121, 1122 [2021] [internal quotation marks and citations omitted[*2]]; see Matter of Ehrman [Center for Discovery], 194 AD3d 1283, 1284 [2021]; Matter of Lesane v City of New York Police Dept., 153 AD3d 1112, 1113 [2017]). To that end, "the Board must consider several factors, including the nature and degree of the work-related permanent impairment and the claimant's functional capabilities and vocational issues, such as the claimant's education, training, skills, age and proficiency in the English language" (Matter of Lesane v City of New York Police Dept., 153 AD3d at 1113; accord Matter of Behan v Career Start Inc., 192 AD3d 1280, 1282 [2021]; see Matter of Varrone v Coastal Envt. Group, 166 AD3d 1269, 1270 [2018], lv denied 32 NY3d 917 [2019]). In evaluating the medical evidence, "the Board may accept or reject portions of a medical expert's opinion" (Matter of Lesane v City of New York Police Dept., 153 AD3d at 1113 [internal quotation marks and citations omitted]), and we accord considerable deference to the Board's evaluation of such evidence, "as well as its resolution of credibility issues, and its resulting determinations — if supported by substantial evidence — will not be disturbed" (Matter of Ehrman [Center for Discovery], 194 AD3d at 1284; see Matter of Castano v Westchester Community Coll., 179 AD3d 1263, 1264 [2020], lv denied 35 NY3d 906 [2020]).
Although claimant testified that her condition "[d]efinitively worsened" following the 2018 surgical procedure, Petroski testified that, when he evaluated claimant in June 2019, he found her condition to be "about the same." In comparing claimant's preoperative and postoperative state, Petroski testified, "She got worse, she had surgery, she got better for awhile [sic] and then the symptoms came back." Regarding the results of claimant's April 2019 MRI, Petroski acknowledged that the study revealed a new bulging disk at the L1-L2 level, but he nonetheless concluded that claimant "was status quo at that point" in that "[s]he had the same symptoms after surgery that she had before surgery." Although Petroski felt that claimant was "a little worse now," he also testified that there were no changes in claimant's activities of daily living as a result of the new disk herniation, that he had not restricted claimant from driving and that his overall classification of claimant as suffering from a moderate permanent partial disability remained unchanged. The Board credited Petroski's testimony in this regard, as well as his ranking as to the severity of claimant's impairment and the exertional limits imposed. Based upon such testimony, and noting that the underlying claim had not been amended to include any new or consequential injuries, the Board ultimately concluded that claimant failed to establish that her condition had worsened to the point that an increase in her loss of wage-earning capacity would be warranted.
With respect to the vocational factors, the Board considered claimant's age, her educational level and her inability to use Microsoft Office [*3]and/or perform her prior job to be aggravating factors, found that claimant's multiple certifications, her computer and Internet skills and her proficiency in the English language were mitigating factors and deemed her possession of a driver's license and her stated inability to drive long distances to be neutral factors. "[A]lthough claimant takes issue with the weight that the Board assigned to each of the aggravating or mitigating factors that it identified, it is not the role of this Court to second-guess the Board's assessment of the evidence before it" (Matter of Ehrman [Center for Discovery], 194 AD3d at 1284-1285). As our review of the Board's decision "reflects that it weighed the proper medical and nonmedical inputs when it assessed claimant's loss of wage-earning capacity" (Matter of Saintval v AMN Healthcare, 165 AD3d 1364, 1367 [2018]), its conclusion that claimant sustained a 25% loss of wage-earning capacity is supported by substantial evidence and will not be disturbed.
As to the Board's rescission of the fee awarded to claimant's counsel,[FN3] Workers' Compensation Law § 24 affords the Board considerable discretion in the approval and award of counsel fees (see Matter of Gilliam v DOCCS Wende Corr. Facility, 190 AD3d 1080, 1082 [2021]). In fashioning an award, relevant considerations include "the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel, the . . . period of representation and the results achieved, as well as claimant's financial circumstances" (id. at 1083 [internal quotation marks, ellipsis and citation omitted]). "If the Board determines that the attorney's efforts did not in any way benefit the claimant in the claim for compensation benefits, it may refuse to approve a fee request. The representation in and of itself is not a benefit unless the claimant receives or will receive some economic benefit from the services" (Employer: NYC Administration For, 2014 WL 1371482, *4, 2014 NY Wrk Comp LEXIS 2173, *10 [WCB No. G057 1442, Apr. 7, 2014]). "It is for the [B]oard to determine whether an attorney has contributed anything to the case for which he [or she] should be paid, and its resolution of this issue will not be disturbed unless arbitrary, capricious or unreasonable as a matter of law" (Matter of McDowell v La Voy, 83 AD2d 680, 680-681 [1981] [citation omitted]).
The initial application submitted by claimant's counsel, which sets forth in detail the services rendered and the time spent in connection therewith, reflects that counsel represented claimant for a number of years, engaged in extensive correspondence with, among others, claimant, Petroski and the carrier, reviewed various reports, attended hearings and successfully sought and obtained a reopening of this matter. Although counsel ultimately did not succeed in obtaining an increase in claimant's loss of wage-earning capacity, the Board rescinded the fee [*4]award solely upon counsel's unsuccessful efforts in this regard. Notwithstanding the Board's broad discretion, this single-factor reasoning strikes us as arbitrary and capricious — particularly in view of the fact that claimant clearly received an economic benefit from counsel's overall representation of her. Accordingly, the Board's decision must be modified to that extent and this matter remitted for further consideration of the fee application.
Egan Jr., J.P., Lynch and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as rescinded the award of counsel fees to claimant's attorney; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: The outpatient facility subsequently was acquired by claimant's initial employer — Glens Falls Hospital.

Footnote 2: As the issues raised upon appeal concern both claimant and her attorney, the notice of appeal should have been filed on behalf of both of them — not just claimant. That said, as no allegation of prejudice has been made, we will disregard this error and treat the notice of appeal as taken by claimant's attorney as well (cf. Matter of Smith v New York City Hous. Auth., 147 AD3d 1184, 1185 n [2017]).

Footnote 3: Although the Board's decision reflects that the carrier initially sought rescission of the award of counsel fees, the carrier now takes no position as to the merits of the award — requesting only that, should the award be reinstated, that the specific means of payment be set forth.