Matter of Harmon v Office of Children & Family Servs. (2022 NY Slip Op 03788)

Matter of Harmon v Office of Children & Family Servs.

2022 NY Slip Op 03788

Decided on June 9, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 9, 2022

534536
[*1]In the Matter of the Claim of Wesley Harmon, Appellant,
v
Office of Children and Family Services et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:April 18, 2022

Before:Garry, P.J., Egan Jr., Colangelo, Ceresia and Fisher, JJ.

Segar & Sciortino, PLLC, Rochester (Nicholas M. Warner of counsel), for appellant.
Hamberger & Weiss LLP, Rochester (Brian D. Schaedler of counsel), for Office of Children and Family Services and another, respondents.

Colangelo, J.
Appeal from a decision of the Workers' Compensation Board, filed July 21, 2021, which ruled that claimant sustained a causally-related 20% schedule loss of use of his left arm.
Claimant, a youth division aide, has an established claim for an injury to his left shoulder sustained at work in December 2018. No fracture or dislocation was detected upon X rays and he returned to work without restrictions approximately one month later. Claimant was thereafter treated by John Goldblatt, an orthopedist who diagnosed him with impingement syndrome and, later, a small rotator cuff tear based upon a January 2020 MRI. Goldblatt prescribed physical therapy, recommended against surgery and pursued a conservative course of treatment. Following his next exam on July 1, 2020, Goldblatt opined that claimant had reached maximum medical improvement (hereinafter MMI) and found the following deficits in his mobility. Goldblatt determined that claimant had a flexion limited to 150 degrees and abduction limited to 135 degrees, constituting a mild deficit, resulting in a 20% schedule loss of use (hereinafter SLU) (see Workers' Compensation Guidelines for Determining Impairment § 5.4, Table 5.4 [a], at 31 [2018]). Goldblatt also found that claimant had moderate deficits in his external and internal rotations (see Workers' Compensation Guidelines for Determining Impairment § 5.4, Table 5.4 [b], at 31 [2018]), and added 10% for a "partial-thickness rotator cuff tear," for a total SLU to his left arm of 30%. Claimant was examined in September 2020 by Frederick Kaempffe, an orthopedist retained to perform an independent medical exam at the behest of the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier). Kaempffe agreed that claimant had reached MMI but opined, based on mobility deficits that were greater than those measured by Goldblatt, that he has an SLU of 50% of the left arm.
After a hearing, a Workers' Compensation Law Judge (hereinafter the WCLJ) found, among other things, that claimant has a 50% SLU of his left arm and, based thereon, awarded his counsel a fee of $16,600. On the carrier's appeal, the Workers' Compensation Board credited Goldblatt's assessment of claimant's left shoulder deficits and his permanency report but removed the 10% assessed for the rotator cuff tear, finding that he had a 20% SLU and noting that the applicable guidelines, the Workers' Compensation Guidelines for Determining Impairment (hereinafter the 2018 guidelines) do not contain a special consideration for an added percentile value for rotator cuff tears, as existed in preceding versions. Additionally, the Board reduced the fee for claimant's counsel to $4,000. Claimant appeals.
"Whether a claimant is entitled to an SLU award and, if so, the resulting percentage are factual questions for the Board to resolve. Consequently, judicial review is limited, and the Board's determination will not be disturbed as long as it is supported [*2]by substantial evidence" (Matter of Strack v Plattsburgh City Sch. Dist., 202 AD3d 1193, 1194 [2022] [internal quotation marks and citations omitted]). Moreover, "[t]he Board is vested with the authority to weigh conflicting medical evidence and to credit the opinion of one medical expert over another" (Matter of Mogilevsky v New York City Tr. Auth., 202 AD3d 1353, 1354 [2022]), and is "free to accept or reject portions of a medical expert's opinion" (Matter of Strack v Plattsburgh City Sch. Dist., 202 AD3d at 1195 [internal quotation marks and citation omitted]).
Claimant argues that the Board was not entitled to credit Goldblatt's opinion over Kaempffe's opinion because only the latter opinion was supportable and properly applied the 2018 guidelines. The Board explained that it found the permanency opinion of Goldblatt, claimant's long-standing treatment provider, more credible based upon, among other factors, its finding that his opinion was more consistent with claimant's medical history and records — including his early reports and presentation to providers, the lapses in medical treatment, the January 2020 MRI results and his return to work. This conclusion is supported by substantial record evidence. Claimant's contention that Goldblatt's earlier, greater measurements of his mobility deficits are inconsistent with his July 2020 finding and relatively consistent with Kaempffe's September 2020 opinion, requiring the latter to be credited, is unpersuasive. The Board was entitled to rely on Goldblatt's July 2020 final evaluation regarding claimant's mobility at the point of MMI. Contrary to claimant's erroneous supposition, Goldblatt did not find during his July 2020 examination that claimant experienced a progressive worsening of his rotator cuff tear or that his measurements at that time were inconsistent with his prior examination findings or otherwise inaccurate. Further, the record discloses no explanation for the reported decrease in claimant's range of motion between Goldblatt's July 2020 final examination and Kaempffe's September 2020 examination, and it supports the Board's conclusion that Kaempffe's opinion was "excessive." Although, as the Board acknowledged, Goldblatt, unlike Kaempffe, did not document in his final evaluation that he had strictly followed the 2018 guidelines for schedule awards with regard to the manner of his examination (see Workers' Compensation Guidelines for Determining Impairment § 1.3 [3], at 7 [2018]), the Board was entitled to determine the weight to be accorded Goldblatt's opinion and to credit it over the carrier's conflicting medical opinion, and it explained its reasons for doing so (see Matter of Mogilevsky v New York City Tr. Auth., 202 AD3d at 1354; Matter of Strack v Plattsburgh City Sch. Dist., 202 AD3d at 1194). Further, as the 2018 guidelines no longer include a special consideration adding a 10% deficit value for a rotator cuff tear, the Board was within its discretion to reduce Goldblatt's [*3]SLU calculation by 10% and determine that claimant sustained a 20% SLU (see Workers' Compensation Guidelines for Determining Impairment § 5.5, at 32 [2018]; cf. Matter of Maloney v Wende Corr. Facility, 157 AD3d 1155, 1156-1157 [2018] [applying the 2012 New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity]).
With regard to the issue of counsel fees, claimant contends that the Board was under an obligation to order claimant's counsel to submit an updated fee application inclusive of the work performed for the administrative appeal, to be reviewed by the WCLJ upon remittal, prior to directing any fee award and that the failure to consider such a supplemental application itself renders the Board's fee reduction arbitrary. Claimant advanced this procedural argument for the first time in his application for full Board review, and he has not appealed from the Board's denial of that application. As such, his supplemental fee application argument is not properly before us (see Matter of Muller Square Deal Machining, Inc., 183 AD3d 992, 993 [2020], appeal dismissed 35 NY3d 1100 [2020]; lv denied 36 NY3d 909 [2021]; Matter of Bailey v Ben Ciccone, Inc., 120 AD3d 871, 872 [2014]).
To the extent that claimant otherwise challenges the fee award, "Workers' Compensation Law § 24 vests in the Board broad discretion with regard to the approval of counsel fees, and such approval will be disturbed by this Court only if it is arbitrary, capricious, unreasonable or otherwise constitutes an abuse of the Board's discretion" (Matter of Gilliam v DOCCS Wende Corr. Facility, 190 AD3d 1080, 1082 [2021] [internal quotation marks and citations omitted]). "In fashioning an award, relevant considerations include the nature and extent of the services, the actual time spent, the necessity therefor, the nature of the issues involved, the professional standing of counsel, the period of representation and the results achieved, as well as [the] claimant's financial circumstances" (Matter of Simmons v Glens Falls Hosp., 202 AD3d 1196, 1199 [2022] [internal quotation marks, ellipsis and citation omitted]; see 12 NYCRR 300.17 [f]). In evaluating the fee application of claimant's counsel, the Board expressly considered the foregoing factors, including that services were rendered in conjunction with the submission of a rebuttal application to the carrier's application for administrative review, as well as the significantly reduced indemnity benefit to which claimant was entitled under its finding of a 20% SLU (see 12 NYCRR 300.17 [d] [1]; [e]; Matter of Tompkins v Bedford Stone & Masonry, 198 AD3d 1031, 1032 [2021]). As such, claimant has failed to identify a basis upon which to disturb the award (see Matter of Tompkins v Bedford Stone & Masonry, 198 AD3d at 1033).
Garry, P.J., Egan Jr., Ceresia and Fisher, JJ., concur.
ORDERED that the decision is affirmed, without costs.