Matter of Arias (City of New York) (2020 NY Slip Op 01429)





Matter of Arias (City of New York)


2020 NY Slip Op 01429


Decided on February 27, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 27, 2020

529151

[*1]In the Matter of the Claim of Franja Arias, Appellant, City of New York, Respondent. Workers' Compensation Board, Respondent.

Calendar Date: January 16, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Grey & Grey, LLP, Farmingdale (Robert E. Grey of counsel), for appellant.
Zachary W. Carter, Corporation Counsel, New York City (Paul Zaragoza of counsel), for City of New York, respondent.



Garry, P.J.
Appeal from a decision of the Workers' Compensation Board, filed April 5, 2019, which ruled, among other things, that claimant was not simultaneously entitled to an award for a schedule loss of use and a permanent partial disability classification.
In January 2016, claimant was injured when she slipped and fell on ice while working as a school crossing guard, and her ensuing claim for workers' compensation benefits was established for right carpal tunnel syndrome and injuries to her right ankle, right hand, right ring finger, neck and back. In November 2018, a Workers' Compensation Law Judge determined that claimant, who was working without reduced earnings, was entitled to a permanent partial disability classification based on impairments to her cervical and lumbar spine and concluded that she had a 40% loss of wage-earning capacity, entitling her to nonschedule benefits not to exceed 275 weeks. Claimant administratively appealed, arguing that, because she had returned to work at preinjury wages and, thus, was not presently entitled to a nonschedule award based upon any actual loss of wages (see Workers' Compensation Law § 15 [3] [w]), she was entitled to a schedule loss of use (hereinafter SLU) award pursuant to this Court's decision in Matter of Taher v Yiota Taxi, Inc. (162 AD3d 1288 [2018], lv dismissed 32 NY3d 1197 [2019]). The Workers' Compensation Board disagreed, maintaining its position that, because claimant's injuries are subject to a nonschedule classification, they are not also amenable to an SLU award. Claimant appeals.
We agree with claimant that the Board's disregard of Matter of Taher was in error. Although the Board has broad discretion as the finder of fact (see Matter of Tobin v Finger Lakes DDSO, 162 AD3d 1286, 1287 [2018]), resolution of the question presented here, and in Matter of Taher, is a matter of statutory interpretation — namely, whether Workers' Compensation Law § 15 (3) permits a simultaneous SLU award and nonschedule classification for impairments that arise out of the same work-related accident where the claimant has returned to work at preinjury wages.
It is necessary to first address the Board's assumption that we have overlooked the 2018 Workers' Compensation Guidelines for Determining Impairment, or the guidelines that preceded it. We recognize that the Board's guidelines have long provided that "[n]o residual impairments must remain in the systemic area (i.e., head, neck, back, etc.) before the claim is considered suitable for schedule evaluation of an extremity or extremities involved in the same accident" (Workers' Compensation Guidelines for Determining Impairment § 1.5 [4], at 8 [2018] [hereinafter the 2018 guidelines]; see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 1.5 [4], at 10 [2012]; State of New York Workers' Compensation Board Medical Guidelines, at 4 [June 1996]). The Board relies upon this language for its position that payment of an SLU award is never appropriate where there is also an established injury to a nonschedule site sustained during the same work-related accident. To the extent that any deference to the Board's interpretation of its guidelines might be warranted (see generally Workers' Compensation Law § 15 [3] [x]; 12 NYCRR 325-1.6 [a]; Matter of Kigin v State of N.Y. Workers' Compensation Bd., 109 AD3d 299, 304-305, 312 [2013], affd 24 NY3d 459 [2014]), we find that the Board's interpretation of this ambiguous provision does not reflect a "fair and considered judgment" on the circumstance presented in this case and decided in Matter of Taher (Kisor v Wilkie, ___ US ___, ___, 139 S Ct 2400, 2417 [2019] [internal quotation marks omitted]; see Auer v Robbins, 519 US 452, 462 [1997]).[FN1] [FN2]
The Board's position would require injured claimants who have returned to work at preinjury wages — who are perhaps more extensively injured than similarly-situated claimants who have sustained only a permanent impairment to a scheduled member — to wait an unspecified period of time to receive any permanent partial disability award until, and only if, they experience actual loss of wages and, thus, become eligible for a nonschedule award. It is instead well established that an SLU award is designed to compensate a claimant for the loss of earning power or capacity presumed to result as a matter of law (see Matter of Taher v Yiota Taxi, Inc., 162 AD3d at 1289; Matter of Gallman v Walt's Tree Serv., 43 AD2d 419, 420 [1974]; Matter of Wilkosz v Symington Gould Corp., 14 AD2d 408, 410 [1961], affd 14 NY2d 739 [1964]). The Board presents this indefinite, and potentially permanent, delay as a "virtual banking" of benefits. It is in fact an attempt to control how prudently a claimant uses or rations his or her lump-sum SLU award — and, thus, a policy choice with no basis in the Workers' Compensation Law. It bears some emphasis that, when a claimant who has sustained a permanent impairment to a member has returned to work at preinjury wages, it is mere speculation that an award will ever be made for nonschedule injuries arising from the same accident. Although the Board may be appropriately concerned about the possibility of double payment or recovery if and when a claimant experiences actual lost wages, this circumstance was provided for within Matter of Taher v Yiota Taxi, Inc. (162 AD3d at 1290 n 2). Additionally, the withholding of an SLU award in favor of the "virtual banking" of nonschedule cap weeks adds unnecessary complexity in the event that a claimant suffers a death that is unrelated to the established sites of injury (see generally Workers' Compensation Law § 15 [3] [u], [w]; [4]).[FN3] We further note that the Board's position strongly incentivizes injured claimants with schedule and nonschedule permanent impairments arising from the same work-related accident who are capable of returning to work at preinjury wages not to do so in order to collect a nonschedule award.
Should the Legislature wish to amend the Workers' Compensation Law to permit the virtual banking of benefits in the manner that the Board desires, it is of course free to do so. Until then, we abide by our prior holding in Matter of Taher. We further conclude that this matter presents the unique circumstance where no initial award was made based on claimant's nonschedule classification; thus, claimant is entitled to an SLU award for the permanent partial impairments to her statutorily-enumerated body members (see Matter of Taher v Yiota Taxi, Inc., 162 AD3d at 1290). Finally, claimant's challenge to the Board's determination regarding her loss of wage-earning capacity, raised for the first time on this appeal, is not preserved for our review (see Matter of Shiner v SUNY at Buffalo, 144 AD3d 1371, 1373 [2016], lv denied 28 NY3d 916 [2017]; Matter of Lattanzio v Consolidated Edison of N.Y., 129 AD3d 1343, 1344 [2015]).
Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as found that claimant may not receive a schedule loss of use award if she receives a nonschedule permanent partial disability classification but no nonschedule award for those impairments arising out of the same work-related accident; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: Notably, the Attorney General elected not to file a responding brief on behalf of, and in support of the position taken by, the Board in this appeal (see Matter of Johnson v All Town Cent. Transp. Corp., 165 AD3d 1574, 1575 n [2018]).

Footnote 2: An SLU award may be inappropriate in the case of a temporary residual impairment to a systemic area, as the Workers' Compensation Law requires that a claimant's partial disability be "permanent in quality" before an award under Workers' Compensation Law § 15 (3) is suitable (Workers' Compensation Law § 15 [3]). The Board's interpretation of section 1.5 (4) of the 2018 guidelines, however, requires affirmatively inserting the word permanent into the guideline, so that it reads "[n]o [permanent] residual impairments." This qualifying word is plainly absent from section 1.5 (4).

Footnote 3: We have not yet had the occasion to address whether, or the extent to which, any remaining portion of a nonschedule award or cap weeks is payable to the beneficiaries identified in Workers' Compensation Law § 15 (4) upon a claimant's death "arising from causes other than the [established] injury" (Workers' Compensation Law § 15 [4]). Although the Board has characterized the "virtual banking" of cap weeks as a "real benefit" that "vests with the claimant upon classification" (Employer: Metropolitan Hospital, 2016 WL 4720221, *3, 2016 NY Wrk Comp LEXIS 16360, *7 [WCB No. G076 1641, Sept. 6, 2016]; see Employer: Cold Spring Hills Center, 2019 WL 3980991, *3, 2019 NY Wrk Comp LEXIS 9414, *7 [WCB No. G124 3859, Aug. 15, 2019]; Employer: The New York Methodist Hospital, 2019 WL 1585790, *4, 2019 NY Wrk Comp LEXIS 3484, *11 [WCB No. 167 6366, Apr. 3, 2019]), a claimant's right to receive a nonschedule award for his or her nonschedule permanent impairments is still conditioned upon a future "wage loss caused by the established injuries" (Employer: Metropolitan Hospital, 2016 WL 4720221, *3, 2016 NY Wrk Comp LEXIS 16360, *7 [WCB No. G076 1641, Sept. 6, 2016]). If a claimant were to die at preinjury wages, such a decedent's beneficiaries could potentially be deprived of the cap weeks that were "virtually banked" because decedent never sustained, and could no longer establish, a causally-related reduction in wages (see Workers' Compensation Law § 15 [4]; Employer: Center for Discovery, 2019 WL 1313956, *1-3, 2019 NY Wrk Comp LEXIS 2705, *3-7 [WCB No. 9070 1546, Mar. 13, 2019]). Such a result would forever deprive a claimant, as well as the beneficiaries identified in Workers' Compensation Law § 15 (4), of any compensation for the claimant's disability.