Matter of Gambardella v New York City Tr. Auth. (2022 NY Slip Op 02475)

Matter of Gambardella v New York City Tr. Auth.

2022 NY Slip Op 02475

Decided on April 14, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 14, 2022

533901
[*1]In the Matter of the Claim of Vincent Gambardella, Appellant,
v
New York City Transit Authority, Respondent. Workers' Compensation Board, Respondent.

Calendar Date:March 21, 2022

Before:Garry, P.J., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Grey & Grey, LLP, Farmingdale (Robert E. Grey of counsel), for appellant.
Jones Jones LLC, New York City (David S. Secemski of counsel), for New York City Transit Authority, respondent.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for Workers' Compensation Board, respondent.

Reynolds Fitzgerald, J.
Appeal from a decision of the Workers' Compensation Board, filed May 17, 2021, which ruled, among other things, that claimant was not simultaneously entitled to an award for a schedule loss of use and a permanent partial disability classification.
In September 2018, claimant, a bus maintainer, sustained various injuries when he lost his balance while trying to lift an 80-pound seat. He subsequently filed a claim for workers' compensation benefits, and a Workers' Compensation Law Judge (hereinafter WCLJ) established, and later amended, the claim for work-related injuries to claimant's back, left shoulder and right third finger and found no compensable lost time because claimant did not incur any compensable lost time from his employment and then voluntarily retired on April 1, 2020. Following the submission of medical reports, deposition testimony and a hearing regarding the permanency of claimant's established sites of injury, the WCLJ determined that claimant had sustained a permanent partial disability consisting of a 35% schedule loss of use (hereinafter SLU) of his left arm, a 15.80% SLU of his right third finger and nonschedule permanent impairment of his lower back, with a class 3, severity B ranking, that was amenable to classification. As she was required to do, the WCLJ also found that claimant had sustained a 10% loss of wage-earning capacity. However, because claimant voluntarily retired and was not entitled to receive a nonschedule award, the WCLJ, based upon this Court's decisions in Matter of Taher v Yiota Taxi, Inc. (162 AD3d 1288, 1290 [2018], lv dismissed 32 NY3d 1197 [2019]) and Matter of Arias v City of New York (182 AD3d 170, 174 [2020]) and their progeny, granted claimant's request to receive a schedule award notwithstanding his nonschedule classification. Upon administrative appeal, the Workers' Compensation Board disagreed with the WCLJ, finding that this Court's decisions in Taher and Arias only apply to claimants who have returned to work at preinjury wages at the time of classification, and, because claimant had voluntarily retired, he was not attached to the labor market at the time of classification and therefore not entitled to any award. Claimant appeals, arguing that, because he did not receive a nonschedule award based upon his nonschedule classification due to his voluntary retirement, he is therefore entitled to receive a schedule award for his statutorily enumerated permanent impairments. We agree.
A nonschedule award "is based [up]on a factual determination of the effect that the [permanent partial] disability has on the claimant's future wage-earning capacity" and is mathematically derived from a claimant's average weekly wages and wage-earning capacity (Matter of Taher v Yiota Taxi, Inc., 162 AD3d at 1289; see Workers' Compensation Law § 15 [3] [w]; Matter of Green v Dutchess County BOCES, 183 AD3d 23, 26 [2020], lv dismissed 36 NY 1044 [2021], lv granted 37 NY3d 907 [2021]). On the other hand, an [*2]SLU award is designed to compensate for a claimant's "loss of earning power" as a result of anatomical or functional losses or impairments (Matter of Fox v Crosbie-Brownlie, Inc., 284 AD2d 42, 44 [2001]) and, as such, "'is not allocable to any particular period of disability'" (Matter of Briggs v Village of Hamilton, 136 AD2d 442, 444 [1988], quoting Matter of Lynch v Board of Educ. of City of N.Y., 1 AD2d 362, 365 [1956], affd 3 NY2d 871 [1957]) and is "independent of the time an employee actually loses from work" (Matter of Landgrebe v County of Westchester, 57 NY2d 1, 6 [1982]; see Matter of Green v Dutchess County BOCES, 183 AD3d at 26). That said, "[a] claimant who sustains both schedule and nonschedule injuries in the same accident may receive only one initial award," because SLU and nonschedule awards "are both intended to compensate a claimant for loss of wage-earning capacity sustained in a work-related accident[,] and concurrent payment of an award for a schedule loss and an award for a nonschedule permanent partial disability for injuries arising out of the same work-related accident would amount to duplicative compensation" (Matter of Taher v Yiota Taxi, Inc., 162 AD3d at 1289-1290). "However, in the unique circumstance where no initial award is made based on a nonschedule permanent partial disability classification, a claimant is entitled to an SLU award" for the permanent impairments sustained in the same work-related accident (id. at 1290 [citation omitted]; accord Matter of Arias v City of New York, 182 AD3d at 174; see Matter of Garrison-Bey v Department of Educ., 187 AD3d 1278, 1279 [2020]).
The Board interprets the rule that we announced in Taher and Arias as requiring that a claimant return to work at preinjury wages in order for that claimant to be eligible to receive an SLU award. To the contrary, the rule that we announced was broader in that we held that a claimant is entitled to an SLU award "in the unique circumstance where no initial award is made based on a nonschedule permanent partial disability classification" (Matter of Taher v Yiota Taxi, Inc. 162 AD3d at 1290; accord Matter of Arias v City of New York, 182 AD3d at 174). The Board's interpretation and application of the foregoing rule is too narrow, as the salient condition for a claimant to receive an SLU award where he or she has both schedule and nonschedule impairments arising out of the same accident is the fact that he or she is ineligible to receive a nonschedule award at the time of classification, whether that be due to his or her return to work at preinjury wages or, as here, voluntary retirement.
Here, there is no dispute that claimant is not entitled to a nonschedule award based upon his nonschedule classification because he voluntarily retired in April 2020 and was therefore not attached to the labor market at the time of classification (see Workers' Compensation Law § 15 [3] [w]). Thus, as "no initial award [wa]s made based [up]on [claimant's[*3]] nonschedule permanent partial disability classification" (Matter of Taher v Yiota Tax, Inc., 162 AD3d at 1290), he "is entitled to an SLU award for the permanent partial impairments to [his] statutorily-enumerated body members" (Matter of Arias v City of New York, 182 AD3d at 174). Finally, and contrary to the position taken by the Board, the fact that claimant voluntarily retired, and was therefore not attached to the labor market, does not preclude him from receiving an SLU award, because "it is axiomatic that a claimant's lack of attachment to the labor market, voluntary or otherwise, is irrelevant to a determination as to entitlement to an SLU award" (Matter of Fuller v NYC Tr. Auth., 202 AD3d 1189, 1190 [2022]).[FN1]
Garry, P.J., Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as found that claimant may not receive a schedule loss of use award if he receives a nonschedule permanent partial disability classification but no nonschedule award for those impairments arising out of the same work-related accident; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: We recognize that a claimant could elect to voluntarily retire or otherwise fail to demonstrate labor market attachment at the time of classification and therefore create the condition necessary to receive an SLU award. However, if such a claimant reattaches to the labor market in the future and receives a nonschedule award for any alleged causally-related reduced earnings, it remains true that the employer and/or workers' compensation carrier would be "entitled to a credit for the payment made on the prior SLU award" (Matter of Taher v Yiota Taxi, Inc., 162 AD3d at 1290 n 2).