Matter of Romero v Akorn Inc. (2025 NY Slip Op 05128)

Matter of Romero v Akorn Inc.

2025 NY Slip Op 05128

Decided on September 25, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 25, 2025

CV-23-1582
[*1]In the Matter of the Claim of Rosa Romero, Appellant,
v
Akorn Inc. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:September 4, 2025

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Polsky Shouldice & Rosen, Rockville Centre (Patrick M. Conroy of counsel), for appellant.
Law Offices of William L. Sherlock, Hartford, Connecticut (Irosha Ratnasekera of counsel), for Akorn Inc. and another, respondents.
Letitia James, Attorney General, New York City (Nina M. Sas of counsel), for Workers' Compensation Board, respondent.

Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed February 7, 2023, which ruled, among other things, that claimant was not entitled to an award for a schedule loss of use and a permanent partial disability classification.
In 2015, claimant was injured at work, and her claim for workers' compensation benefits was subsequently established for work-related injuries to her right knee, head, neck and back. Claimant thereafter received continuing medical treatment, which included, among other things, a total right knee replacement in 2017. Claimant was subsequently evaluated for permanency by the carrier's consultant and claimant's treating physician — each of whom found that claimant's impairments had reached maximum medical improvement and that claimant had sustained a permanent partial disability amenable to classification. Although both physicians considered, among other things, the permanent impairment of claimant's right knee, they did not assign a schedule loss of use (hereinafter SLU) relative thereto because claimant's injuries were amenable to classification. Following deposition testimony from the foregoing physicians and a hearing, a Workers' Compensation Law Judge (hereinafter WCLJ), in a March 2019 decision, classified claimant with a permanent partial disability consisting of a lumbar spine condition (soft tissue) of B severity and a right knee condition and she was found to have a 75% loss of wage-earning capacity (hereinafter LWEC). The WCLJ also found, however, that claimant was not entitled to any awards because she had failed to demonstrate that she was attached to the labor market.[FN1]
Claimant continued to treat for her right knee, and, in October 2021, claimant's treating physician filed a Doctor's Report of MMI/Permanent Impairment (form EC-4.3) opining that claimant had sustained a 65% SLU of the right leg due to permanent range of motion restrictions in her right knee. At an ensuing hearing, and following our decisions in Matter of Taher Yiota Taxi, Inc. (162 AD3d 1288 [3d Dept 2018], lv dismissed 32 NY3d 1197 [2019]) and Matter of Arias v City of New York (182 AD3d 170 [3d Dept 2020] [holding that, where a worker sustains both schedule and nonschedule injuries in the same accident and no initial award is made based upon the injured worker's nonschedule classification, the worker may be entitled to an SLU award for permanent partial impairments to statutorily enumerated body parts]), claimant requested a finding regarding SLU given the change in case law. In a March 2022 decision, the WCLJ denied claimant's request, finding that all issues regarding permanency were made on prior findings and awards and that there was no prior application for an SLU award at the time that permanency was addressed. Upon administrative review, the Workers' Compensation Board affirmed, finding that claimant's permanent partial disability classification already considered her right knee impairment and that claimant failed to previously [*2]submit any medical evidence or opinion concerning a potential SLU award of the right leg (knee) at the time that permanency was addressed and litigated in 2019. Claimant appeals, and we reverse.
"A nonschedule award 'is based [up]on a factual determination of the effect that the [permanent partial] disability has on the claimant's future wage-earning capacity' and is mathematically derived from a claimant's average weekly wages and wage-earning capacity" (Matter of Gambardella v New York City Tr. Auth., 204 AD3d 1210, 1211 [3d Dept 2022], lvs dismissed 39 NY3d 955 [2022], 39 NY3d 955 [2022], quoting Matter of Taher v Yiota Taxi, Inc., 162 AD3d at 1289; see Workers' Compensation Law § 15 [3] [w]). "On the other hand, an SLU award is designed to compensate for a claimant's loss of earning power as a result of anatomical or functional losses or impairments and, as such, is not allocable to any particular period of disability and is independent of the time an employee actually loses from work" (Matter of Gambardella v New York City Tr. Auth., 204 AD3d at 1211 [internal quotation marks and citations omitted]). That said, "[a] claimant who sustains both schedule and nonschedule injuries in the same accident may receive only one initial award," because SLU and nonschedule awards "are both intended to compensate a claimant for loss of wage-earning capacity sustained in a work-related accident[,] and concurrent payment of an award for a schedule loss and an award for a nonschedule permanent partial disability for injuries arising out of the same work-related accident would amount to duplicative compensation" (Matter of Taher v Yiota Taxi, Inc., 162 AD3d at 1289-1290; accord Matter of Gambardella v New York City Tr. Auth., 204 AD3d at 1211-1212). "However, in the unique circumstance where no initial award is made based on a nonschedule permanent partial disability classification, a claimant is entitled to an SLU award for the permanent impairments sustained in the same work-related accident" (Matter of Gambardella v New York City Tr. Auth., 204 AD3d at 1212 [internal quotation marks and citations omitted]).
"[T]he salient condition for a claimant to receive an SLU award where he or she has both schedule and nonschedule impairments arising out of the same accident is the fact that he or she is ineligible to receive a nonschedule award at the time of classification, whether that be due to his or her return to work at preinjury wages or . . . voluntary retirement" (id.). Further, we have explained that a claimant's failure to demonstrate attachment to the labor market at the time of classification "does not preclude him [or her] from receiving an SLU award, because 'it is axiomatic that a claimant's lack of attachment to the labor market, voluntary or otherwise, is irrelevant to a determination as to entitlement to an SLU award' " (id. at 1212-1213, quoting Matter of Fuller v NYC Tr. Auth., 202 AD3d 1189, 1190 [3d Dept 2022], lv denied 39 NY3d 903 [2022]).
There is no dispute that, when permanency was addressed in 2019, claimant was not entitled to a nonschedule award based upon her nonschedule classification because she failed to demonstrate attachment to the labor market (see Workers' Compensation Law § 15 [3] [w]). Thus, as "no initial award [wa]s made based [up]on [claimant's] nonschedule permanent partial disability classification" (Matter of Taher v Yiota Taxi, Inc., 162 AD3d at 1290), she "is entitled to an SLU award for the permanent partial impairments to her statutorily-enumerated body members" (Matter of Arias v City of New York, 182 AD3d at 174). In its decision, the Board relies on the fact that no opinion on SLU was produced at the time of classification — which already took into consideration claimant's right knee impairment — and, therefore, this issue should not be relitigated now. Claimant, however, would have had no reason to obtain an opinion on SLU in 2019 because, prior to our decision in Matter of Taher, claimant's injuries were only amenable to classification. Moreover, had there been no evidence that claimant was potentially eligible for an SLU finding in 2019, as the Board posits, there would have been no reason for the Board to take into consideration claimant's permanent impairment to her right knee when it classified her with a permanent partial disability. The fact that the Board did so is, by itself, evidence of a permanent impairment of claimant's right knee that existed at that time that can now be subject to an SLU finding. Finally, we note that the Board's position against retroactivity in this case seems to be inconsistent with its policy position governing its procedures for determining awards for certain SLUs, wherein the Board states that, "[i]f the Board issued a prior decision contrary to the newly issued . . . decisions [in Matter of Taher and its progeny as was the case here], the Board will reopen its cases upon request" (Workers' Compensation Bd Release Subject No. 046-1211 [Mar. 13, 2020]). Such a request was made here, and we therefore remit for that purpose.
Garry, P.J., Aarons, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as found that claimant may not receive a schedule loss of use award if she receives a nonschedule permanent partial disability classification but no nonschedule award for those impairments arising out of the same work-related accident; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: No administrative appeal was taken from the WCLJ's March 2019 decision.