Matter of Fiato v New York State Dept. of Transp. (2021 NY Slip Op 03882)





Matter of Fiato v New York State Dept. of Transp.


2021 NY Slip Op 03882


Decided on June 17, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 17, 2021

529921
[*1]In the Matter of the Claim of Daniel Fiato, Appellant,
v
New York State Department of Transportation et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:April 22, 2021

Before:Garry, P.J., Egan Jr., Lynch and Colangelo, JJ.

Lemire & Higgins, LLC, Malta (Christopher R. Lemire of counsel), for appellant.
Tanisha S. Edwards, State Insurance Fund, Albany (Krystina K. Smith of counsel), for New York State Department of Transportation and another, respondents.



Garry, P.J.
Appeals (1) from a decision of the Workers' Compensation Board, filed July 16, 2019, which ruled that claimant was entitled to a 15% schedule loss of use award for his left leg, (2) from a decision of said Board, filed September 17, 2019, which denied claimant's application for reconsideration and/or full Board review, and (3) from a decision of said Board, filed August 24, 2020, which found that the Workers' Compensation Law Judge lacked jurisdiction to review the Board's July 16, 2019 decision.
In 2011, claimant suffered a meniscus tear in his left knee as the result of a work-related accident, and his claim for workers' compensation benefits was established. Claimant underwent surgery to repair the injury and, in 2012, he was found to have a 20% schedule loss of use (hereinafter SLU) of the left leg. In 2017, claimant underwent total left knee replacement surgery. In 2018, claimant's surgeon and a medical examiner who examined claimant on behalf of the employer's workers' compensation carrier both opined that claimant sustained a 35% SLU of the left leg as a result of the knee replacement surgery, relying on the 2018 Workers' Compensation Guidelines for Determining Impairment (hereinafter the 2018 Guidelines). Following a hearing, a Workers' Compensation Law Judge (hereinafter WCLJ) found that the 2012 New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity (hereinafter the 2012 Guidelines) apply to this matter and directed the parties to produce medical evidence regarding claimant's SLU using those guidelines. In a decision filed on July 16, 2019, the Workers' Compensation Board reversed the WCLJ's decision, finding that the 2018 Guidelines apply and that the medical experts properly considered claimant's SLU following the knee replacement surgery using those guidelines. Accordingly, the Board credited those medical opinions and found that claimant had a 35% SLU of the left leg. As claimant had previously been awarded a 20% SLU for the left leg, the Board found that the 35% SLU of the left leg must be reduced by the prior 20% SLU for that body member, resulting in a 15% SLU award for the left leg. Claimant's application for reconsideration and/or full Board review of this decision was denied in September 2019.
Although the WCLJ had continued the case pending the Board's administrative review, he acknowledged at a hearing held subsequent to the Board's July 2019 decision that he lacked jurisdiction to review that Board decision and closed the case. In a decision filed August 24, 2020, the Board affirmed the WCLJ's decision. Claimant appeals from the Board's July 2019, September 2019 and August 2020 decisions.[FN1]
Claimant contends that his SLU following the 2017 knee replacement surgery should have been evaluated using the 2012 Guidelines. We disagree. "SLU awards are not given for particular injuries, but they are made to compensate an injured worker for his or her loss of earning power [*2]or capacity that is presumed to result, as a matter of law, from the residual permanent physical and functional impairments to statutorily-enumerated body members" (Matter of Covington v New York City Dept. of Corr., 187 AD3d 1285, 1285 [2020] [internal quotation marks and citations omitted]; accord Matter of Semrau v Coca-Cola Refreshments USA Inc., 189 AD3d 1873, 1874 [2020]). Pursuant to the 2017 amendments to the Workers' Compensation Law, the Board was directed to promulgate new permanency impairment guidelines for SLU injuries (see Workers' Compensation Law § 15 [3] [x], as amended by L 2017, ch 59, part NNN, subpart B, § 1). In promulgating the new guidelines, the Chair of the Board was directed to consult with, among others, representatives from labor and business and medical providers, and the new guidelines were to reflect the "advances in modern medicine that enhance healing and result in better outcomes" (Workers' Compensation Law § 15 [3] [x]).
The resultant 2018 Guidelines went into effect on January 1, 2018, and the statute repealed the 2012 Guidelines as of that same date (see Workers' Compensation Law § 15 [3] [x]; Matter of Semrau v Coca-Cola Refreshments USA Inc., 189 AD3d at 1875 n 2). The Chair issued Subject No. 046-1011 on December 28, 2017, advising that the 2018 Guidelines were replacing the 2012 Guidelines with respect to SLU determinations. As relevant here, the Chair also advised that "[f]or SLU claims that have at least one examination conducted before January 1, 2018, the Board will consider the issue of SLU to have been joined under the auspices of the Guidelines in effect at the time, and as such the Board will determine the claimant's degree of permanent disability using the 2012 Guidelines. Where the first medical evaluation of SLU occurs on or after January 1, 2018, the question of SLU will be evaluated under the 2018 SLU Guidelines." In our view, Subject No. 046-1011 comports with the legislative mandate contained in Workers' Compensation Law § 15 (3) (x) and the Board's administrative and discretionary authority (see generally Matter of Knapp v Bette & Cring LLC, 166 AD3d 1428, 1430 [2018]).
The record reflects that, following the 2012 surgery to repair the meniscus tear in his left knee, claimant was found to have a 20% SLU of the left leg. In 2018, the medical experts calculated claimant's current SLU of the left leg following total knee replacement surgery. Although the prior SLU award for the left leg was determined under the 2012 Guidelines, in light of the legislative mandate that the 2018 Guidelines take into account the advances in medical treatment — and as the first evaluation of this current SLU claim occurred after January 1, 2018 — the Board properly relied on the medical experts' SLU calculations using the 2018 Guidelines to determine claimant's current SLU (see Matter of Semrau v Coca-Cola Refreshments USA Inc., 189 AD3d at 1875 n 2). Pursuant to the 2018 Guidelines, knee replacement [*3]surgery with a "good" outcome, as was found by the medical experts here, results in a 35% SLU (Workers' Compensation Guidelines for Determining Impairment § 7.5, at 44).[FN2] Accordingly, substantial evidence supports the Board's finding of a 35% SLU of the left leg (see Matter of Maunder v B & B Lbr. Co., 166 AD3d 1261, 1261 [2018]; Matter of Maloney v Wende Corr. Facility, 157 AD3d 1155, 1156 [2018]).
Claimant argues that the only fair and equitable method to set his SLU following the knee replacement surgery is to use the 2012 Guidelines. Specifically, claimant contends that, because of differences between the 2012 Guidelines and the 2018 Guidelines, his SLU award following the knee replacement surgery would have been greater had the 2012 Guidelines been used. Yet the Legislature expressly directed that the 2018 Guidelines be promulgated in order to take into account that medical advances since 2012 have resulted in better outcomes — i.e., lesser residual permanent impairments (see Workers' Compensation Law § 15 [3] [x]). Accordingly, the fact that an SLU calculation using the 2018 Guidelines resulted in a lower SLU award than under the 2012 Guidelines was anticipated by the Legislature and is not a ground to reverse the Board's decision in this matter.[FN3]
Finally, because the prior 20% SLU award was also for the impairment of the left leg, the Board properly deducted that SLU award from the current 35% SLU for the same body member (see Matter of Covington v New York City Dept. of Corr., 187 AD3d at 1285-1286; Matter of Blair v SUNY Syracuse Hosp., 184 AD3d 941, 943 [2020]; Matter of Genduso v New York City Dept. of Educ., 164 AD3d 1509, 1510 [2018]). Thus, the 15% SLU award will not be disturbed. Claimant's remaining contentions, to the extent not expressly addressed herein, have been considered and found to be without merit.
Egan Jr., Lynch and Colangelo, JJ., concur.
ORDERED that the decisions are affirmed, without costs.



Footnotes

Footnote 1: We deem claimant's appeals from the September 2019 and August 2020 decisions to be abandoned because he failed to raise any arguments challenging those decisions (see Matter of Turner v Graphic Paper Inc., 151 AD3d 1127, 1128 n [2017]).

Footnote 2: Claimant argues that the medical professionals later opined that claimant suffered either a 45% or 55% SLU. However, those alternative SLU calculations were based upon the 2012 Guidelines, after the WCLJ incorrectly determined — in a ruling that was later reversed by the Board in its July 2019 decision — that those earlier guidelines should be used. Applying the 2018 Guidelines, as the Board determined should be done here, renders these later opinions irrelevant.

Footnote 3: We note that, on its website, the Board addresses which guidelines to use in situations such as this — where a prior SLU was determined under the 2012 Guidelines and there is an additional SLU — and advises that the 2018 Guidelines should be used on the additional SLU (Schedule Loss of Use Frequently Asked Questions, http:www.wcb.ny.gov/content/main/hcpp/
ImpairmentGuidelines/SLU-FAQs.jsp [in question #5 under the heading Conducting SLU Exams, and question #7 under the heading Using the Guidelines: 2012 or 2018 Guidelines?]).