Matter of Blue v New York State Off. of Children & Family Servs. (2022 NY Slip Op 03565)

Matter of Blue v New York State Off. of Children & Family Servs.

2022 NY Slip Op 03565

Decided on June 2, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 2, 2022

534152
[*1]In the Matter of the Claim of Maurice Blue, Appellant,
v
New York State Office of Children and Family Services et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:April 19, 2022

Before:Lynch, J.P., Clark, Aarons, Colangelo and McShan, JJ.

Kirk & Teff, LLP, Kingston (William J. Kistner III of counsel), for appellant.
Stockton, Barker & Mead, LLP, Troy (Nicholas M. Herubin of counsel), for New York State Office of Children and Family Services and another, respondents.

Clark, J.
Appeal from a decision of the Workers' Compensation Board, filed April 21, 2021, which ruled that claimant was entitled to a 10% schedule loss of use of the right leg.
In December 2016, claimant injured his right leg in a work-related accident, and his claim for workers' compensation benefits was later established for injury to the right knee. Claimant's physician diagnosed him with a causally-related medial meniscus tear and significant chondromalacia patella of the right knee. After finding that claimant had reached maximum medical improvement, claimant's physician concluded that claimant's severe range of motion deficits corresponded to a 50% schedule loss of use (hereinafter SLU) of the right leg (see Workers' Compensation Guidelines for Determining Impairment, Table 7.4, at 42 [2018]). However, looking to the Workers' Compensation Guidelines for Determining Impairment (hereinafter the 2018 guidelines), the physician also found that the diagnosis of chondromalacia patella required application of a special consideration under knee and tibia impairments regarding same, which provides an enumerated SLU value for chondromalacia patella of 7½ to 10% (see 2018 Workers' Compensation Guidelines for Determining Impairment § 7.5, special consideration 4, at 43 [2018] [hereinafter special consideration 4]). Based upon his understanding of how the Workers' Compensation Board applies knee and tibia special considerations, claimant's physician ultimately limited his opinion and concluded that claimant was entitled to a 10% SLU of the right leg, notwithstanding claimant's separate meniscus injury. The physician who evaluated claimant on behalf of the employer's workers' compensation carrier diagnosed claimant with internal derangement of the right knee and similarly found that claimant suffered from deficits in flexion and extension that corresponded to a 50% SLU of the right leg.
Neither physician was deposed, and the parties submitted memoranda of law in support of their respective positions. Upon review thereof, a Workers' Compensation Law Judge (hereinafter WCLJ) issued a bench decision concluding that, although special consideration 4 was factually relevant, claimant's overall loss of use was controlling. The WCLJ accordingly awarded claimant a 50% SLU based upon claimant's range of motion deficits — the percentage agreed upon by both physicians. The carrier administratively appealed, arguing that it was improper for the WCLJ to issue an award based upon range of motion deficits where a special consideration with an enumerated SLU value was applicable. The Board agreed and, crediting the opinion of claimant's physician for having applied special consideration 4, modified the WCLJ's SLU award to 10%, disregarding any loss of use attributable to claimant's meniscal tear. Claimant appeals.
Claimant argues that the Board's interpretation of special consideration 4 and the instructions regarding its application is irrational and runs afoul of [*2]the purpose of Workers' Compensation Law § 15 (3). We agree. "SLU awards are not given for particular injuries, but they are made to compensate an injured worker for his or her loss of earning power or capacity that is presumed to result, as a matter of law, from the residual permanent physical and functional impairments to statutorily-enumerated body members" (Matter of Fiato v New York State Dept. of Transp., 195 AD3d 1251, 1252-1253 [2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 917 [2022]; see Matter of Genduso v New York City Dept. of Educ., 164 AD3d 1509, 1510 [2018]; Matter Taher v Yiota Taxi, Inc., 162 AD3d 1288, 1289 [2018], lv denied 32 NY3d 1197 [2019]). In order to standardize the methodology for evaluation and assessment of such permanent impairment, the Board is empowered to promulgate guidelines, but those guidelines must be "reasonable" and "consistent with and supplemental to the [Workers' Compensation Law]" (Workers' Compensation Law § 117 [1]; see Workers' Compensation Law § 15 [3] [x]; 12 NYCRR 325-1.6 [a]; Matter of Kigin v State of N.Y. Workers' Compensation Bd., 24 NY3d 459, 467 [2014]; see e.g. Workers' Compensation Guidelines for Determining Impairment [2018]; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity [2012] [hereinafter the 2012 guidelines]; State of New York Workers' Compensation Board Medical Guidelines [1996] [hereinafter the 1996 guidelines]).
Beginning with the 1996 guidelines and through to the applicable 2018 guidelines, there has been a special consideration for the knee providing that "[c]hondromalacia patella, mild to marked degree, equals 7½% [to] 10% loss of use of the leg, depending on the defects of motion and atrophy of muscles found" (State of New York Workers' Compensation Board Medical Guidelines § [I] [B] [2], special consideration 4, at 18 [1996]; see Compensation Guidelines for Determining Impairment § 7.5, special consideration 4, at 43 [2018]; New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 3.2, special consideration 4, at 28 [2012]). Under the 1996 and 2012 guidelines, the Board routinely applied the chondromalacia patella special consideration in a manner that permitted SLU awards comprised of a value from within that enumerated range plus additional values for other injuries to the same joint (see e.g. Employer: PSEG Power New York Inc., 2017 WL 3208894, *3-5, 2017 NY Wrk Comp LEXIS 9598, *9-12 [WCB No. G114 1387, July 25, 2017]; Employer: Con Edison, 2013 WL 5000463, *2-3, 2013 NY Wrk Comp LEXIS 8340, *5-9 [WCB No. G002 5222, Sept. 6, 2013]; Employer: H.D.A./H.P.D, 2003 WL 21369338, *1-2, 2003 NY Wrk Comp LEXIS 83122, *2-5 [WCB No. 0001 6088, June 6, 2003]; Employer: Marcy Corr. Facility, 2002 WL 486657, *2, 2002 NY Wrk Comp LEXIS 89565, *3-5 [WCB No. 6991 7637, Mar. 21, 2002]).
Legislation enacted in April 2017 directed the Board to consult with various stakeholders [*3]to adopt revised guidelines for the evaluation of medical impairment and determination of permanency with respect to injuries that are amenable to an SLU award to be "reflective of advances in modern medicine that enhance healing and result in better outcomes" (Workers' Compensation Law § 15 [3] [x]). As noted above, the chondromalacia patella special condition remained unchanged after that revision. At issue is instead the following two instructions regarding the application of special considerations regarding the knee and tibia.
Section 7.4 of the 2018 guidelines instructs that, to determine the overall SLU for the knee and tibia, "first assess whether any special considerations apply," and, "[i]f not, consider deficits in flexion . . . or extension . . . per [Table 7.4] if applicable" (Workers' Compensation Guidelines for Determining Impairment § 7.4, at 42 [2018]). The special considerations for the knee and tibia may be found in the following section. As relevant here, those instructions provide as follows: "The following are special considerations that have enumerated schedule loss of use values. Other deficits may be added when specified or when no schedule value is provided" (Workers' Compensation Guidelines for Determining Impairment § 7.5, at 43 [2018]).[FN1] In full, special consideration 4 states that "[c]hondromalacia patella, mild to marked degree, equals 7½ [to] 10% loss of use of the leg, depending on the deficits of motion and atrophy of the muscles found" (Workers' Compensation Guidelines for Determining Impairment § 7.5, at 43 [2018]).
Relying on the plain language of the 2018 guidelines, the Board reads special consideration 4 as making no provision for additional values due to flexion or extension deficits, reasoning that the enumerated SLU range already takes into account range of motion deficits. It is therefore the Board's position that, whenever chondromalacia patella is present, an SLU value for the knee as a whole must be in the range of 7½ to 10% (see Employer: Vil. of Garden City, 2019 WL 1585845, *6, 2019 NY Wrk Comp LEXIS 3534, *11-16 [WCB Nos. G123 6155, G127 2547, Apr. 4, 2019]; but see Employer: Gen. Elec. Co., 2021 WL 5150807, *4, 2021 NY Wrk Comp LEXIS 4955, *9-10 [WCB No. G216 1753, Oct. 29, 2021]; Employer: Owens, 2021 WL 3433349, *1-2, 2021 NY Wrk Comp LEXIS 1157723, *___ [WCB No. G115 7723, July 29, 2021]; Employer: CBUBTL LLC, 2020 WL 3569429, *2-3, 2020 NY Wrk Comp LEXIS 6776, *4-7, [WCB No. G205 9265, June 26, 2020]; Employer: Preferred Home Care, 2020 WL 5090167, *2-3, 2020 NY Wrk Comp LEXIS 13131, *5-6 [WCB No. G202 3500, Aug. 24, 2020]; Employer: David James Meyers Sr., 2019 WL 4567611, *2-3, 2019 NY Wrk Comp LEXIS 10947, *3-6 [WCB No. G186 2351, Sept. 11, 2019]). In other words, the Board interprets "[o]ther deficits" to mean any other injuries to or conditions of the same joint, versus deficits other than the 7½ to 10% loss of use that stem from chondromalacia patella itself.[FN2] The Board appears [*4]to view the instruction in section 7.4 as buttressing its interpretation of section 7.5, which directs that one should only consider range of motion deficits if no special considerations apply.[FN3]
Although special consideration 4 may arguably be said to rationally limit an SLU value when it is based upon only a finding of chondromalacia patella, the Board's interpretation of the foregoing instructions results in the obvious inequity identified by claimant and cannot be upheld. To accept the Board's interpretation would be to sanction an application of the 2018 guidelines that results in claimants with only meniscus tears routinely receiving SLU awards far greater than 7½ to 10% based upon their range of motion deficits (see Workers' Compensation Guidelines for Determining Impairment § 7.3, at 42 [2018]; see e.g. Employer: Off. of Child. & Fam., 2021 WL 666276, *3-4, 2021 NY Work Comp LEXIS 1834927, *___ [WCB No. G183 4927, Feb. 17, 2021]; Employer: NYCTA, 2021 WL 4692241, *4-5, 2021 NY Wrk Comp LEXIS G1918491, *___ [WCB No. G191 8491, Oct. 5, 2021]; Employer: FOJP Serv. Corp., 2021 WL 391158, *3, 2021 NY Work Comp LEXIS 551, *5-6 [WCB No. G205 2561, Jan. 29, 2021]; Employer: New York City Tr. Auth., 2020 WL 7663750, *3-4, 2020 NY Work Comp LEXIS 15949, *7-10 [No. G208 7657, Dec. 22, 2020]), while limiting SLU awards for claimants with the exact same injury and exact same range of motion deficits — or perhaps even greater range of motion deficits — because they happen to have an additional diagnosis of chondromalacia patella (see e.g. Employer: Treehouse Foods Inc., 2022 WL 739155, *1-4, 2022 NY Work Comp LEXIS 1161, *2-7 [WCB No. G234 1644, Mar. 4, 2022]; Employer: Medallion Hotel Corp., 2021 WL 4468660, *3-4, 2021 NY Wrk Comp LEXIS 4152, *5-9 [WCB No. G194 8897, Sept. 23, 2021]; Employer: Dept. of Corr., 2020 WL 5259520, *1-3, 2020 NY Work Comp LEXIS 13342, *1-6 [WCB No. G217 0159, Aug. 26, 2020]; Employer: Maximus Inc., 2019 WL 5667879, *2-3, 2019 NY Work Comp LEXIS 14809, *4-7 [WCB No. G207 8337, Oct. 29, 2019]).
Although "medical advances since 2012 have resulted in better outcomes — i.e., lesser residual permanent impairments" (Matter of Fiato v New York State Dept. of Transp., 195 AD3d at 1254), there is nothing to suggest that the Legislature, in directing the Board to revise its guidelines to reflect those advances, intended for similarly situated claimants to receive vastly disparate SLU awards (compare id.), particularly in light of the fact that, under the Board's interpretation, it is the claimants suffering from greater injury that are the ones receiving lesser compensation (see Matter of Arias v City of New York, 182 AD3d 170, 172-173 [2020]).[FN4] If anything, the Legislature has repeatedly evinced its intent to ensure the exact opposite result (cf. Matter of Mancini v Office of Children & Family Servs., 32 NY3d 521, 529-530 [2018]). Thus, to the extent that any deference to the Board's interpretation of its guidelines is warranted[*5](see generally Workers' Compensation Law § 15 [3] [x]; 12 NYCRR 325-1.6 [a]; Kisor v Wilkie, ___ US ___, ___, 139 S Ct 2400, 2417-2418 [2019]; Matter of Kigin v State of N.Y. Workers' Compensation Bd., 109 AD3d 299, 304-305, 312 [2013], affd 24 NY3d 459 [2014]), we find that the Board's interpretation of the ambiguous instructions in sections 7.4 and 7.5 "does not reflect a fair and considered judgment on the circumstance presented in this case" (Matter of Arias v City of New York, 182 AD3d at 172-173 [internal quotation marks and citations omitted]).[FN5] Under these circumstances, the matter must be remitted to the Board so that a proper assessment of the evidence may occur (see Matter of Green v Dutchess County BOCES, 183 AD3d 23, 30-31 [2020], lv dismissed 36 NY3d 1044 [2021], lv granted 37 NY3d 907 [2021]; Matter of Estate of Youngjohn v Berry Plastics Corp., 169 AD3d 1237, 1239-1240 [2019], affd 36 NY3d 595 [2021]; Matter of Carlucci v Omnibus Print. Co., Inc., 68 AD3d 1259, 1260 [2009]).
Lynch, J.P., Aarons, Colangelo and McShan, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as found that Workers' Compensation Guidelines for Determining Impairment chapter 7, special consideration 4 precludes a schedule loss of use value for impairment of the knee and tibia resulting from diagnoses other than chondromalacia patella; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The relevant aspects of the above instructions may be found in the instructions for each chapter that has special considerations (see Workers' Compensation Guidelines for Determining Impairment §§ 2.5 [B], [C]; 3.4, 3.5, 4.4, 4.5, 5.4, 5.5, 6.4, 6.5, 7.4, 7.5, 8.4, 8.5 [2018]).

Footnote 2: This latter interpretation — that additions for "[o]ther deficits" means deficits related to the injury or condition that is the subject of the given special consideration — finds support when looking at the special considerations that expressly permit the addition of mobility deficits (see e.g. Workers' Compensation Guidelines for Determining Impairment §§ 3.5, special considerations 2, 3; 4.5, special considerations 1, 5; 5.5, special consideration 5; 6.5, special considerations 1, 5; 7.5, special consideration 1 [2018]).
Footnote 3: As the Board has acknowledged, the plain language of the instruction to section 7.4 contemplates a scenario where more than one special consideration may apply (see Employer: NYS Dept. of Corr., 2021 WL 3233266, *3, 2021 NY Wrk Comp LEXIS ___, *___ [WCB No. G105 9680, July 27, 2021]), and it does so without limitation or qualification as to whether the special considerations permitted to coexist themselves permit the addition of "[o]ther deficits."

Footnote 4: In contrast, the 2012 guidelines contained a special consideration for meniscus excisions — not meniscus tears generally — that was omitted from the 2018 guidelines (see New York State Guidelines for Determining Permanent Impairment and Loss of Wage Earning Capacity § 3.2, special consideration 9, at 28 [2012]), a revision that is rationally reflective of advancements in surgical interventions and outcomes. Although claimant did not have any meniscus excision prior to being found to have reached maximum medical improvement, to the extent that the foregoing revision has impacted the Board's position, we note that "neither the governing statute nor the 2018 guidelines supports the conclusion that a claimant who sustains an otherwise qualifying permanent impairment to a body part of a statutorily enumerated member is not entitled to an SLU merely because that particular body part is not specifically referenced in a special consideration" (Matter of Semrau v Coca-Cola Refreshments USA Inc., 189 AD3d 1873, 1875 [2020]).

Footnote 5: Even in the absence of ambiguity, it bears emphasis that "the guidelines only provide useful criteria that need not be slavishly followed by the Board" when they lead to a clearly inequitable end (Matter of Haight v Con Edison, 78 AD3d 1468, 1469 [2010] [internal quotation marks and citation omitted], lv denied 16 NY3d 708 [2011]; see Matter of Hughes v Mid Hudson Psychiatric Ctr., 197 AD3d 1376, 1378 [2021]; see Matter of Caezza v Via Health, 111 AD3d 1033, 1034 [2013]).