Matter of Ward v NYC Tr. Auth. (2023 NY Slip Op 01716)

Matter of Ward v NYC Tr. Auth.

2023 NY Slip Op 01716

Decided on March 30, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 30, 2023

534883
[*1]In the Matter of the Claim of Tony Ward, Claimant,
v
NYC Transit Authority, Appellant. Workers' Compensation Board, Respondent.

Calendar Date:February 15, 2023

Before:Garry, P.J., Lynch, Clark, Reynolds Fitzgerald and McShan, JJ.

Jones Jones LLC, New York City (Stacee Vaikness of counsel), for appellant.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for respondent.

Lynch, J.
Appeals (1) from a decision of the Workers' Compensation Board, filed October 5, 2021, which ruled that claimant was entitled to a schedule loss of use award, and (2) from a decision of said Board, filed January 6, 2022, which denied the self-insured employer's application for reconsideration and/or full Board review.
Claimant, a bus driver for the self-insured employer for more than 30 years, has an established claim for occupational disease relating to his left shoulder, both wrists, right hip, right knee and both ankles. Claimant retired in early 2017 and subsequently was diagnosed by his treating physician as suffering from repetitive stress injuries to the affected sites producing, among other conditions, derangement with traumatic tendonitis — all of which were causally-related to claimant's employment. On February 13, 2019, claimant's treating physician filed a permanency report indicating that claimant had reached maximum medical improvement and finding that claimant had sustained a schedule loss of use (hereinafter SLU) of his left arm (50%), right hand (40%), left hand (45%), right leg (55% inclusive of right hip and knee), right foot (40%) and left foot (40%). That same day, the physician filed a revised permanency report reducing the SLU percentages for the affected body members as follows: left arm (35%), right hand (25%), left hand (30%), right leg (35% inclusive of right hip and knee), right foot (25%) and left foot (25%). As explained in the revised report and the physician's subsequent deposition testimony, the percentages were adjusted based upon, among other things, reconsideration of the applicable impairment guidelines, the results of various diagnostic tests and claimant's overall history and progression of symptoms.
Following the physician's deposition and claimant's testimony, a Workers' Compensation Law Judge (hereinafter WCLJ) established the claim, and the matter was continued for the employer to produce an independent medical examination report relative to the SLU percentages assessed. An additional hearing was held in May 2021, at the conclusion of which the WCLJ found that claimant had sustained a 30% SLU of his left hand, a 25% SLU of his right hand, a 35% SLU of his left arm, a 25% SLU of his left foot, a 25% SLU of his right foot and a 35% SLU of his right leg. In response, the employer filed an application for review by the Workers' Compensation Board, contending that the report and testimony offered by claimant's treating physician was not credible, failed to take into account claimant's preexisting conditions and was otherwise not in accordance with the Workers' Compensation Guidelines for Determining Impairment. Accordingly, the employer argued, there was no competent and/or credible medical evidence to support the SLU awards made. After addressing each of the employer's claims and analyzing the report tendered and testimony offered by claimant's treating physician, the Board — in a detailed decision — upheld [*2]the WCLJ's findings. The employer's subsequent application for reconsideration and/or full Board review was denied, prompting these appeals.
Where a claimant has sustained a permanent partial disability, an SLU award may be warranted (see Matter of Johnson v City of New York, 180 AD3d 1134, 1135-1136 [3d Dept 2020], affd 38 NY3d 431 [2022]; Matter of Bell v Glens Falls Ready Mix Co., Inc., 169 AD3d 1145, 1146 [3d Dept 2019]). "SLU awards are not given for particular injuries, but they are made to compensate an injured worker for his or her loss of earning power or capacity that is presumed to result, as a matter of law, from the residual permanent physical and functional impairments to statutorily-enumerated body members" (Matter of Fiato v New York State Dept. of Transp., 195 AD3d 1251, 1252-1253 [3d Dept 2021] [internal quotation marks and citations omitted], lv denied 37 NY3d 917 [2022]; see Matter of Kromer v UPS Supply Chain Solutions, 206 AD3d 1413, 1414 [3d Dept 2022]; Matter of Maunder v B & B Lbr. Co., 166 AD3d 1261, 1261 [3d Dept 2018]). "The amount of an SLU award is based upon the body member that was injured and the degree of impairment sustained; it is not allocable to any particular period of disability and is independent of any time that the claimant might lose from work" (Matter of Johnson v City of New York, 180 AD3d at 1136 [internal quotation marks and citations omitted]). "Whether a claimant is entitled to an SLU award and, if so, the resulting percentage are factual questions for the Board to resolve" (Matter of Maunder v B & B Lbr. Co., 166 AD3d at 1261 [citations omitted]), and the Board's determinations in this regard, if supported by substantial evidence in the record as a whole, will not be disturbed (see Matter of Gilliam v DOCCS Wende Corr. Facility, 190 AD3d 1080, 1081 [3d Dept 2021]; Matter of Bell v Glens Falls Ready Mix Co., Inc., 169 AD3d at 1146). Notably, although the Workers' Compensation Guidelines for Determining Impairment "provide useful criteria to be used in assessing a claimant's degree of disability, the ultimate determination rests with the Board" (Matter of Soluri v Superformula Prods., Inc., 96 AD3d 1292, 1292 [3d Dept 2012]; see Matter of VanDermark v Frontier Ins. Co., 60 AD3d 1171, 1172 [3d Dept 2009]).
Both the revised permanency report and corresponding testimony offered by claimant's treating physician — the sole medical professional to offer an opinion as to the appropriate SLU percentage to be awarded — contained a detailed recitation of the specific degree of impairment attributable to each of claimant's affected body members and, in turn, recited the SLU percentage that would be warranted by the applicable guidelines — if such guidelines were applied in isolation. Claimant's treating physician testified, however, that he did not believe that a pro forma application of the SLU percentages set forth in the guidelines was warranted when considered in the context of claimant's entire history[*3]. Specifically, the physician noted that claimant's various impairments developed over time, were overlayed with degenerative changes and were to some measure attributable to conditions that were not part of claimant's established claim. As a result, the physician adopted SLU percentages that were less than the percentages set forth in the applicable guidelines. Even assuming, without deciding, that the guidelines do not — as the employer argues — distinguish between acute and chronic or progressive injuries, claimant's physician nonetheless provided a rational explanation — supported by the diagnostic studies referenced in his report and testimony and his experience in treating claimant since 2017 — as to why he revised and reduced the SLU percentages assigned to claimant's affected body members. In light of such testimony, which the Board was free to accept or reject (see Matter of Gilliam v DOCCS Wende Corr. Facility, 190 AD3d at 1081; Matter of Maunder v B & B Lbr. Co., 166 AD3d at 1262), and given that "the guidelines only provide useful criteria that need not be slavishly followed by the Board" (Matter of Blue v New York State Off. of Children & Family Servs., 206 AD3d 1126, 1132 n 5 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of VanDermark v Frontier Ins. Co., 60 AD3d at 1172), we find that the Board's decision as to the SLU awards made to claimant is supported by substantial evidence. Accordingly, the Board's October 2021 decision is affirmed.
The employer's assertion that the Board erred in denying its application for reconsideration and/or full Board review is unpersuasive. "To succeed on an application for reconsideration and/or full Board review, the applicant must demonstrate that newly discovered evidence exists, that there has been a material change in condition, or that the Board improperly failed to consider the issues raised in the application for review in making its initial determination" (Matter of Osorio v TVI Inc., 193 AD3d 1219, 1222 [3d Dept 2021] [internal quotation marks, brackets and citations omitted]; accord Matter of Grinnage v New York City Tr. Auth., 210 AD3d 1251, 1255-1256 [3d Dept 2022]). The employer's sole argument on this point — that the Board failed to address the alleged deficiencies in the medical proof — is belied by the record, which reveals that the Board indeed considered each of the employer's claims in this regard. Accordingly, we find no basis upon which to conclude that the Board abused its discretion or acted in an arbitrary or capricious manner in denying the employer's application (see Matter of Eastman v Glens Falls Hosp., 202 AD3d 1232, 1233 [3d Dept 2022]). The employer's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Garry, P.J., Clark, Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the decisions are affirmed, without costs.