Matter of Wright v Elmer W. Davis Inc. (2024 NY Slip Op 04853)

Matter of Wright v Elmer W. Davis Inc.

2024 NY Slip Op 04853

Decided on October 3, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 3, 2024

CV-23-0342
[*1]In the Matter of the Claim of Tyler Wright, Appellant,
v
Elmer W. Davis Inc. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:September 6, 2024

Before:Garry, P.J., Egan Jr., Reynolds Fitzgerald, Ceresia and Powers, JJ.

Bronk & Somers, PC, Rochester (Daniel A. Bronk of counsel), for appellant.
Walsh and Hacker, Albany (Jesse M. Gleason of counsel), for Elmer W. Davis Inc. and another, respondents.

Powers, J.
Appeal from a decision of the Workers' Compensation Board, filed January 20, 2023, which ruled that claimant is entitled to a 45% schedule loss of use award.
In 2018, claimant was injured while stepping into his truck and a Workers' Compensation Law Judge (hereinafter WCLJ) subsequently established claimant's workers' compensation claim for benefits for a work-related injury to his right leg (knee). In January 2019, claimant underwent a right knee orthoscopy with chondroplasty. Following a June 2021 permanency evaluation, Gregg Nicandri, claimant's orthopedic physician and surgeon who examined claimant and took range of motion (hereinafter ROM) measurements, opined that claimant had reached maximum medical improvement and had sustained a 45% schedule loss of use (hereinafter SLU) of the right leg based upon those ROM deficits. In turn, Martin Gingras, a consultant obtained by the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier), conducted an independent medical examination of claimant in September 2021 and opined, based upon claimant's ROM deficits, that claimant had sustained a 45% SLU of the right leg. Subsequently, in a May 2022 letter, Nicandri stated that, upon reviewing the 2018 New York State Guidelines for Determining Impairment and Loss of Wage Earning Capacity (hereinafter the 2018 guidelines), the SLU percentage should be adjusted proportionally by adding the flexion and extension proportional SLUs together, which resulted in his revised finding that claimant had sustained a 52.5% SLU of the right leg. The carrier objected to Nicandri's revised determination on SLU. Following a hearing and submission of a memorandum of law in which claimant's attorney argued that neither physician who evaluated claimant for permanency had applied the 2018 guidelines correctly and that, upon properly applying same, claimant had sustained a 51.667% SLU of the right leg, the WCLJ found that claimant sustained a 51.667% SLU of the right leg and, among other things, awarded benefits. Upon administrative appeal, the Workers' Compensation Board, among other things, modified the WCLJ's decision and determined that claimant had sustained a 45% SLU of the right leg. In doing so, the Board credited the opinion of Gingras and the initial 2021 opinion from Nicandri, each of which the Board found to be consistent with the 2018 guidelines and claimant's condition. Claimant appeals.
We affirm. "SLU awards are made to compensate for the loss of earning power or capacity that is presumed to result, as a matter of law, from permanent impairments to statutorily-enumerated body members" (Matter of Taher v Yiota Taxi, Inc., 162 AD3d 1288, 1289 [3d Dept 2018] [citations omitted], lv dismissed 32 NY3d 1197 [2019]; see Workers' Compensation Law § 15 [3] [a]-[v]; Matter of Mancini v Office of Children & Family Servs., 32 NY3d 521, 526 n [2018]; Matter of Garofalo v Verizon N.Y., Inc., 227 AD3d 1350, 1352 [3d Dept 2024]). "Although [*2]a claimant may receive more than one SLU award for a loss of use of more than one member or parts of members, such SLU awards are nonetheless limited to only those statutorily-enumerated members listed in Workers' Compensation Law § 15 (3)" (Matter of Blair v SUNY Syracuse Hosp., 184 AD3d 941, 942 [3d Dept 2020] [internal quotation marks, ellipsis and citations omitted]; see Matter of Bell v Glens Falls Ready Mix Co., Inc., 169 AD3d 1145, 1146 [3d Dept 2019]). "[W]hether a claimant is entitled to an SLU award and, if so, the resulting percentage are factual questions for the Board to resolve and, thus, the Board's determination will be upheld provided that it is supported by substantial evidence" (Matter of Kromer v UPS Supply Chain Solutions, 206 AD3d 1413, 1416 [3d Dept 2022] [internal quotation marks and citations omitted]; accord Matter of Ward v NYC Tr. Auth., 214 AD3d 1277, 1279 [3d Dept 2023]).
As relevant here, section 7.4 of the 2018 guidelines instructs that, "[t]o determine the overall [SLU] of the knee, first assess whether any special considerations apply" and, "[i]f not, consider deficits in flexion (A) or extension (B) per [Table 7.4] if applicable. When evaluating based on range of motion, [an SLU] cannot exceed [the] value for ankylosis" (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]; see Matter of Blue v New York State Off. of Children & Family Servs., 206 AD3d 1126, 1129 [3d Dept 2022]). Section 7.4 also provides that "[SLU] percentages for ranges of motion values above/below those depicted [in Table 7.4] should be adjusted proportionally" (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]).
Table 7.4 contains three rows. The first row, which bears the label "A," applies to flexion deficits and defines full flexion as zero to 140 degrees (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]). A mild deficit of flexion is defined as flexion to only 120 degrees, which equates to a 10% SLU (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]). A moderate deficit of flexion to only 90 degrees equates to a 40% SLU (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]). A marked deficit of flexion to 45 degrees equates to a 55% SLU (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]). The second row of Table 7.4, which bears the label "B," applies to extension deficits and defines full extension to zero degrees (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]). Row B does not define a mild deficit or marked deficit; rather, it defines only a moderate deficit as extension between 10 degrees and 25 degrees to which it attributes between a 7.50% and 10% SLU (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]). The third and final row of Table 7.4, labeled "C," sets forth the SLU percentages for both flexion and [*3]extension deficits (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]). Row C defines a mild deficit as an SLU between 10% and 15%, a moderate deficit as an SLU between 40% and 45%, and a marked deficit as an SLU of 66.66% (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]).
Both physicians who evaluated claimant for permanency found that claimant presented with right knee flexion of 85 degrees — equating to a 40% SLU as per row A. As for extension, Nicandri found that claimant exhibited an extension deficit of 30 degrees — equating to a 7½% to 10% SLU as per row B — and Gingras found that claimant exhibited an extension deficit of 25 degrees — also equating to a 7½% to 10% SLU as per row B. Based upon their range of motion findings, each physician initially determined that the foregoing deficits in flexion and extension warranted a 45% SLU of the right leg. Nicandri, however, subsequently revised his determination by proportionally adjusting forward flexion of 85 degrees to a 41.67% SLU and extension of 30 degrees to a 10.833% SLU, which he added together for a total SLU of the right leg of 52.5%. This numerical revision by Nicandri was correct under the 2018 guidelines, as "[SLU] percentages for ranges of motion values above/below those depicted [in rows A and B of Table 7.4] should be adjusted proportionally" (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]).
However, where, as here, there are both flexion and extension deficits, we reject claimant's contention that Table 7.4 requires the Board to derive a total SLU percentage in row C by adding the values of rows A and B for a cumulative SLU percentage. Row C contains only three specific loss of use percentages for mild (10-15%), moderate (40-45%) or marked permanent impairments (66&frac23;%) of the knee where there are both flexion and extension deficits present, and row C does not contain any values for cumulative range of motion deficits that could be adjusted proportionally. Based upon the proportionally adjusted values for range of motion deficits found by the physicians in rows A and B, claimant experienced a moderate loss in both flexion (40% SLU) and extension (10% SLU) resulting in a total SLU percentage of 40-45% as per row C of Table 7.4 (Workers' Compensation Guidelines for Determining Impairment § 7.4 at 42 [2018]). In view of the foregoing, we find that substantial evidence supports the Board's determination that claimant experienced a 45% SLU of the right leg based upon the physicians' findings regarding his range of motion deficits and that such conclusion is consistent with section 7.4 of the 2018 guidelines (cf. Matter of Blue v New York State Off. of Children & Family Servs., 206 AD3d at 1129). To the extent that we have not specifically addressed any of claimant's remaining contentions, they have either been rendered academic by our decision or considered and found to be without merit.
Garry[*4], P.J., Egan Jr., Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the decision is affirmed, without costs.