Matter of Amato v Patchogue Supermarkets LLC (2024 NY Slip Op 05523)

Matter of Amato v Patchogue Supermarkets LLC

2024 NY Slip Op 05523

Decided on November 7, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 7, 2024

CV-23-1451
[*1]In the Matter of the Claim of Domenico Amato, Appellant,
v
Patchogue Supermarkets LLC et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:October 15, 2024

Before:Clark, J.P., Pritzker, Lynch, Fisher and Powers, JJ.

The Perecman Firm, PLLC, New York City (Edward Guldi of counsel), for appellant.
Cherry, Edson & Kelly, LLP, Melville (David W. Faber of counsel), for Patchogue Supermarkets LLC and another, respondents.

Pritzker, J.
Appeal from a decision of the Workers' Compensation Board, filed July 6, 2023, which, among other things, ruled that claimant was entitled to a 20% schedule loss of use award for each of his arms.
In May 2019, claimant was injured at work, and his ensuing workers' compensation claim for benefits was established for injuries involving bilateral shoulders and biceps. Claimant underwent arthroscopic surgery in July 2020 to repair tears of the rotator cuff and biceps tendon, along with debridement of the rotator cuff and biceps tendon, subacromial decompression, and glenohumeral synovectomy of the right shoulder. In January 2021, claimant had arthroscopic surgery to repair a tear of the biceps tendon, along with debridement of labral fraying and the biceps tendon, subacromial decompression, and glenohumeral synovectomy of the left shoulder. In March 2022, claimant was evaluated for permanency by Frank Hudak, the carrier's orthopedic consultant, who found that claimant had reached maximum medical improvement (hereinafter MMI) and that, based upon claimant's range of motion (hereinafter ROM) deficits and special consideration No. 6 of the Workers' Compensation Guidelines for Determining Impairment (hereinafter the 2018 guidelines), claimant had sustained a 40% schedule loss of use (hereinafter SLU) of the left arm and a 30% SLU of the right arm. In April 2022, claimant's orthopedic surgeon, Lee Kupersmith, who had previously measured claimant's ROM deficits in June 2021 and January 2022, examined claimant for permanency and found that claimant had sustained a 42.5% SLU of the left arm and a 42.5% SLU of the right arm. Following deposition testimony from the two evaluating physicians, as well as a hearing, a Workers' Compensation Law Judge found that claimant had sustained a bilateral 42.5% SLU of the arms. Upon administrative review, the Workers' Compensation Board, among other things, rejected the medical opinions of both physicians as unreliable because, at the time that they evaluated claimant for permanency, claimant had decreased ROM compared to measurements taken at prior examinations and, therefore, the Board found that "claimant was not giving it his best effort with [ROM] at the time of the [permanency] examinations." Instead, the Board credited Kupersmith's prior ROM measurements that were taken in June 2021 and January 2022, which resulted in a 20% SLU of the left arm and a 20% SLU of the right arm. Claimant appeals.
"[W]hether a claimant is entitled to an SLU award and, if so, the resulting percentage are factual questions for the Board to resolve and, thus, the Board's determination will be upheld provided that it is supported by substantial evidence" (Matter of Kromer v UPS Supply Chain Solutions, 206 AD3d 1413, 1416 [3d Dept 2022] [internal quotation marks and citations omitted]; accord Matter of Ward v NYC Tr. Auth., 214 AD3d 1277, 1279 [3d Dept 2023]). "Moreover, the Board is vested with the authority to weigh conflicting medical evidence [*2]and to credit the opinion of one medical expert over another, and is free to accept or reject portions of a medical expert's opinion" (Matter of Harmon v Office of Children & Family Servs., 206 AD3d 1214, 1215 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]).
Section 5.4 of the 2018 guidelines apply here and instruct that, "[t]o determine the overall [SLU] of the shoulder, first assess whether any special considerations apply. If not, where deficits are present in abduction and flexion see table [5.4 (a)] and use whichever deficit is higher. . . . When evaluating based on [ROM], the overall deficit, when combined, cannot exceed the value of ankylosis" (New York Workers' Compensation Guidelines for Determining Impairment § 5.4 at 30 [2018]; see generally Matter of Blue v New York State Off. of Children & Family Servs., 206 AD3d 1126, 1129 [3d Dept 2022]). In turn, section 5.5 of the guidelines provides special considerations that provide enumerated SLU values, and "[o]ther deficits may be added when specified or when no schedule value is provided" (Matter of Garrow v Lowe's Home Ctrs. Inc., 227 AD3d 1242, 1244 n 3 [3d Dept 2024] [internal quotation marks and citation omitted]). As relevant here, special consideration No. 6 provides that "[n]on-surgical rupture of the long head of the biceps muscle is equal to 10-15% loss of use of the arm. Rupture at distal point of insertion of the biceps is equal to 20% loss of use of the arm. Taking into consideration mobility and muscle weakness, the schedule can vary up to 33&frac13;% loss of use of the arm depending on degree of impairment found" (New York Workers' Compensation Guidelines for Determining Impairment § 5.5, special consideration 6 at 32 [2018]).
The record reflects, as the Board found, that upon conducting permanency evaluations in March 2022 and April 2022, both evaluating physicians found that claimant had reached MMI and had sustained ROM deficits that were more significant than the prior ROM deficits that were previously measured during claimant's period of temporary impairment. Absent explanations from either physician concerning the unexplained increase in ROM deficits at the time of claimant's permanency evaluations, we are unable to disturb the Board's finding that claimant was not giving it his best efforts during the ROM testing and, therefore, the Board's rejection of the physicians' opinions on SLU as "wholly unreliable."[FN1]
Although the Board is not bound to accept the opinion of any medical expert and was therefore permitted to reject the medical opinions on permanency as it did here (see Matter of Garrow v Lowe's Home Ctrs. Inc., 227 AD3d at 1245), it was improper for the Board to fashion its own SLU percentages based upon the June 2021 and January 2022 medical reports of Kupersmith. These examinations were not conducted for the purpose of evaluating permanency and did not address whether claimant reached MMI. In this regard, these reports stated that claimant's [*3]condition was improving and recommended additional physical therapy. Further, Kupersmith's examinations in June 2021 and January 2022 failed to take and record three repeat ROM measurements in order "to measure the maximum range of active motion" as the 2018 guidelines instruct the examiner to do when assessing an SLU (New York Workers' Compensation Guidelines for Determining Impairment § 1.3 at 7 [2018]). Inasmuch as "[a]n SLU evaluation should only be performed after the claimant has reached MMI" (Workers' Compensation Board, Impairment Guidelines, SLU Frequently Asked Questions, Obtaining or Requesting an SLU Evaluation at No. 2, available at http://www.wcb.ny.gov/content/main/hcpp/
ImpairmentGuidelines/SLU-FAQs.jsp [last accessed Nov. 1, 2024]), it was premature for the Board to rely upon Kupersmith's June 2021 and January 2022 medical reports to make its findings on SLU. In view of the foregoing, the evidence relied upon by the Board was insufficient to render findings on permanency and an SLU, and the matter must be remitted for further consideration by the Board (see generally Matter of Hughes v Mid Hudson Psychiatric Ctr., 197 AD3d 1376, 1378-1379 [3d Dept 2021]; Matter of Rodriguez v Coca Cola, 178 AD3d 1184, 1186 [3d Dept 2019]; Matter of Sullivan v Sysco Corp., 199 AD2d 849, 851 [3d Dept 1993]). To the extent that we have not addressed any of claimant's remaining contentions, they have either been rendered academic by our decision or considered and found to be without merit.
Clark, J.P., Lynch, Fisher and Powers, JJ., concur.
ORDERED that the decision is modified, on the law, without costs, by reversing so much thereof as found that claimant sustained a 20% SLU of the left arm and a 20% SLU of the right arm; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: We note that the Board advises that, where an evaluating physician suspects that a claimant is not cooperating with the examination for ROM, "[t]he examining physician should note his or her belief that claimant was not cooperating with the exam[ination] in his or her IME-4 report and decline to offer an SLU opinion" if claimant's level of cooperation renders such task impossible (Workers' Compensation Board, Impairment Guidelines, SLU Frequently Asked Questions, Range of Motion at No. 5, available at http://www.wcb.ny.gov/content/main/hcpp/ImpairmentGuidelines/SLU-FAQs.jsp [last accessed Nov. 1, 2024]). An evaluating physician should also "[n]ote the inconsistency and consider whether . . . claimant is giving maximal effort or whether the claimant is at MMI" (Workers' Compensation Board, Impairment Guidelines, SLU Frequently Asked Questions, Range of Motion at No. 11, available at http://www.wcb.ny.gov/content/main
/hcpp/ImpairmentGuidelines/SLU-FAQs.jsp [last accessed Nov. 1, 2024]).