Matter of Johnston v Howmet Aerospace Inc. (2025 NY Slip Op 00504)

Matter of Johnston v Howmet Aerospace Inc.

2025 NY Slip Op 00504

Decided on January 30, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 30, 2025

CV-23-1516
[*1]In the Matter of the Claim of Marnie Johnston, Appellant,
v
Howmet Aerospace Inc. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:January 9, 2025

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Lynch, JJ.

Carlisle Law Firm, PC, Ogdensburg (Otis E. Simon of counsel), for appellant.
Lois Law Firm LLC, New York City (Addison O'Donnell of counsel), for Howmet Aerospace Inc. and another, respondents.

Pritzker, J.
Appeal from a decision of the Workers' Compensation Board, filed May 10, 2023, which ruled that claimant was entitled to a 50% schedule loss of use award for her left arm.
In June 2020, claimant, a factory metal worker, sustained a work-related injury that was later established for the left shoulder, and temporary indemnity benefits were made. In September 2020, Bedros Bakirtzian, claimant's treating physician, performed a surgical arthroscopic slap repair debridement of the rotator cuff and resection of the long head of the biceps, transplantation and tenodesis of the long head of the biceps in the bicipital, resection of the distal clavicle and acromioplasty. In August 2021, Bakirtzian performed a second surgical procedure on claimant. Bakirtzian last treated claimant on January 4, 2022, at which time he took range of motion (hereinafter ROM) measurements of 90 degrees for forward flexion and abduction and normal elbow and wrist movement, recommended that claimant be evaluated for a schedule loss of use (hereinafter SLU) and found that claimant had a light duty functional capacity/exertion ability. Claimant thereafter sought a permanency examination with another physician, Stewart Kaufman, who performed an examination of claimant in August 2022 and who found that claimant had sustained a 70% SLU of the left arm (shoulder) based upon, among other things, ROM deficits of 55 degrees for abduction and 50 degrees for flexion. In September 2022, claimant underwent another medical examination, which was performed by the carrier's consultant, Thomas Haher, who evaluated claimant for permanency but found that claimant had not yet reached maximum medical improvement (hereinafter MMI). Following claimant's submission of an October 2022 affidavit in which she stated that her injury is at MMI and that she does not plan to have any additional surgical procedures on her left shoulder, a Workers' Compensation Law Judge (hereinafter WCLJ) found, among other things, that claimant's injury had reached MMI and that her injury was amenable to a 50% SLU of the left arm (shoulder) based upon her ROM deficits and special consideration No. 5 of the Workers' Compensation Guidelines for Determining Impairment (hereinafter the 2018 guidelines). Upon administrative appeal, the Workers' Compensation Board affirmed, adopting the findings and decision of the WCLJ. In doing so, the Board credited Bakirtzian's January 2022 medical report, and the ROM measurements reported therein, which were consistent with a November 29, 2021 medical report from the carrier's orthopedic consultant, Robert Michaels, who similarly found flexion to 120 degrees and abduction to 90 degrees. Claimant appeals.
"Generally, where there is no continuing need for medical treatment and the medical condition is essentially stable, an SLU award is appropriate" (Matter of Olaya v United Parcel Serv. Inc., 176 AD3d 1266, 1270 [3d Dept 2019] [internal quotation marks, brackets and citations omitted]). "Conversely[*2], an award of continuing disability benefits, rather than one for [SLU], is appropriate where there is a continuing condition of pain or continuing need for medical treatment or the medical condition remains unsettled" (id. [internal quotation marks and citations omitted]). "[W]hether a claimant is entitled to an SLU award and, if so, the resulting percentage are factual questions for the Board to resolve and, thus, the Board's determination will be upheld provided that it is supported by substantial evidence" (Matter of Kromer v UPS Supply Chain Solutions, 206 AD3d 1413, 1416 [3d Dept 2022] [internal quotation marks and citations omitted]; accord Matter of Ward v NYC Tr. Auth., 214 AD3d 1277, 1279 [3d Dept 2023]). "Although . . . the Board cannot substitute its opinion in place of an uncontroverted medical opinion that is supported by evidence in the record, it is equally clear that the Board is not bound to accept the opinion of any expert and may reject an expert medical opinion if it is incredible, speculative or lacks evidentiary support in the record — even if such opinion/evidence is the only proof offered on a particular issue" (Matter of Birro v Wolkow-Braker Roofing Corp., 226 AD3d 1228, 1229 [3d Dept 2024] [internal quotation marks and citations omitted]; see Matter of Amato v Patchogue Supermarkets LLC, 232 AD3d 970, 972 [3d Dept 2024]; Matter of Harmon v Office of Children & Family Servs., 206 AD3d 1214, 1215 [3d Dept 2022]). Section 5.4 of the 2018 guidelines apply here and instruct that, "[t]o determine the overall [SLU] of the shoulder, first assess whether any special considerations apply. If not, where deficits are present in abduction and flexion see table [5.4 (a)] and use whichever deficit is higher. . . . When evaluating based on [ROM], the overall deficit, when combined, cannot exceed the value of ankylosis" (New York Workers' Compensation Guidelines for Determining Impairment § 5.4 at 30 [2018]; see generally Matter of Blue v New York State Off. of Children & Family Servs., 206 AD3d 1126, 1129 [3d Dept 2022]). Section 5.5 of the 2018 guidelines also provides special considerations that provide enumerated SLU values, and "[o]ther deficits may be added when specified or when no schedule value is provided" (Matter of Garrow v Lowe's Home Ctrs. Inc., 227 AD3d 1242, 1244 n 3 [3d Dept 2024] [internal quotation marks and citation omitted]).[FN1]
The record reflects, as the Board found, that the August 2022 and September 2022 examinations on permanency yielded more severe ROM deficits than those previously measured during claimant's period of temporary impairment. Absent an explanation from either Kaufman or Haher concerning the unexplained increase in ROM deficits at the time of claimant's permanency evaluations, we are unable to disturb the Board's rejection of Kaufman's opinion on SLU (see Matter of Amato v Patchogue Supermarkets LLC, 232 AD3d at 972-973).[FN2]
Although the Board is not bound to accept the opinion of any medical expert [*3]and was therefore permitted to reject Kaufman's medical opinion on permanency and SLU as it did here (see Matter of Garrow v Lowe's Home Ctrs. Inc., 227 AD3d at 1245), it was improper for the Board to fashion its own SLU percentage based upon the ROM measurements contained in the November 2021 and January 2022 medical reports of Michaels and Bakirtzian, respectively. These examinations, which were conducted just months after claimant's second surgery in August 2021, were not conducted for the purpose of evaluating permanency and did not sufficiently address whether claimant's injury reached MMI. To this point, the physicians performing these orthopedic examinations in November 2021 and January 2022 "failed to take and record three repeat ROM measurements in order 'to measure the maximum range of active motion' as the 2018 guidelines instruct the examiner to do when assessing an SLU" (Matter of Amato v Patchogue Supermarkets LLC, 232 AD3d at 973, quoting New York Workers' Compensation Guidelines for Determining Impairment § 1.3 at 7 [2018]). "An SLU evaluation should only be performed after the claimant has reached MMI" (Workers' Compensation Board, Impairment Guidelines, SLU Frequently Asked Questions, Obtaining or Requesting an SLU Evaluation at No. 2, available at http://www.
wcb.ny.gov/content/main/hcpp/ImpairmentGuidelines/SLU-FAQs.jsp [last accessed Jan. 24, 2025]), and it was therefore improper for the Board to rely upon the ROM deficits observed during the November 2021 and January 2022 examinations when rendering its finding on SLU. "In view of the foregoing, the evidence relied upon by the Board was insufficient to render findings on permanency and an SLU, and the matter must be remitted for further consideration by the Board" (Matter of Amato v Patchogue Supermarkets LLC, 232 AD3d at 973 [citations omitted]). To the extent that we have not addressed any of claimant's remaining contentions, they have either been rendered academic by our decision or considered and found to be without merit.
Garry, P.J., Egan Jr., Aarons and Lynch, JJ., concur.
ORDERED that the decision is modified, on the law, without costs, by reversing so much thereof as found that claimant sustained a 50% SLU of the left arm; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The parties do not dispute that special consideration No. 5 would apply here. Special consideration No. 5 provides that "[r]esection of the clavicle, either end, equals [an SLU of] 10% for bone loss; entire clavicle equals 15% [SLU] of the arm. Add for mobility deficits of the single most notable in relation to functional deficit if present" (New York Workers' Compensation Guidelines for Determining Impairment § 5.5, special consideration 5 at 32 [2018]).

Footnote 2: We recently reiterated the Board's guidance that, "whe[n] an evaluating physician suspects that a claimant is not cooperating with the examination for ROM, '[t]he examining physician should note his or her belief that claimant was not cooperating with the exam[ination] in his or her IME-4 report and decline to offer an SLU opinion' if claimant's level of cooperation renders such task impossible" (Matter of Amato v Patchogue Supermarkets LLC, 232 AD3d at 973 n, quoting Workers' Compensation Board, Impairment Guidelines, SLU Frequently Asked Questions, Range of Motion at No. 5, available at http://www.wcb.ny.gov/content/main/hcpp/ImpairmentGuidelines/
SLU-FAQs.jsp [last accessed Jan. 24, 2025]). Further, an evaluating physician should also "[n]ote the inconsistency and consider whether . . . claimant is giving maximal effort or whether the claimant is at MMI" (Workers' Compensation Board, Impairment Guidelines, SLU Frequently Asked Questions, Range of Motion at No. 11, available at http://www.wcb.ny.gov/content/main/hcpp/ImpairmentGuidelines/SLU-FAQs.jsp [last accessed Jan. 24, 2025]).